In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2134

BETTY M. JORDAN and
THEODORE R. JORDAN,

*Plaintiffs-Appellants*,

*v.*

KELLY D. BINNS and
U.S. XPRESS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-01160-WTL-MJD—**William T. Lawrence**, *Judge.*

ARGUED OCTOBER 12, 2012—DECIDED APRIL 4, 2013

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* This diversity action arises out of a tragic accident in which Betty Jordan ultimately lost both of her legs at the knees after the motorcycle she was operating on an interstate highway collided with a semi tractor-trailer operated by Kelly Binns. Betty and her husband, Ted Jordan (collectively, the Jordans or the plaintiffs), sued Binns and his employer,

U.S. Xpress, Inc. (collectively, the defendants), for negligence and loss of consortium under Indiana law. A jury trial resulted in a defense verdict. The Jordans seek a new trial on grounds that several of the district court's evidentiary rulings ran afoul of the rule against hearsay, Fed. R. Evid. 802. We affirm.

On the morning of August 22, 2008, Kelly Binns was driving eastbound on I-70 through downtown Indianapolis, Indiana, in a semi tractor-trailer; he had just picked up a load of auto parts and was transporting it to a business in Ohio on behalf of U.S. Xpress. Binns was traveling in the center lane through a right-hand curve when he heard a "banging noise"; he looked at his passenger-side mirror and saw a motorcycle sliding down the right lane. After pulling over to the shoulder, Binns ran back to find Betty Jordan lying on the pavement, moaning and screaming. According to Binns, when he arrived at Betty's side, Betty repeatedly said, "Tell the trucker it's not his fault. It's my fault." (Betty has no recollection of making these statements and does not recall seeing Binns at the scene.) Binns relayed Betty's statements to U.S. Xpress claims manager Keri Bukovitz, Indiana State Trooper Russell Litt, and insurance adjuster Kevin Niles (who had been hired by U.S. Xpress), and each of these witnesses testified to that effect at trial. Additionally, Trooper Litt recorded Binns's statement as to what Binns claimed Betty had said on his Indiana Officer's Standard Crash Report ("Crash Report").

At some point, Ted Jordan, who had been notified of his wife's accident and had arrived on the scene shortly

thereafter, introduced himself to Binns as Betty's husband. Binns testified that Ted "mentioned that he was an old truck driver and that [Betty had] mentioned it wasn't [Binns's] fault." Trooper Litt similarly testified that Ted told him that Betty had said that the accident had been her fault, not the trucker's fault. As he did with Binns's statement, in the Crash Report Trooper Litt recorded Ted's recitation of Betty's statement. Similarly, Niles testified that, when he went to interview Ted at the hospital, Ted told him that Betty had said the accident had been her fault. In his report ("Adjuster's Report"), Niles noted Ted's statement and, citing the Crash Report, also indicated that Ted similarly had told Trooper Litt that Betty had said the accident had been her fault. For his part, Ted denied that Betty had made any statements concerning fault, and he also denied that he had made any statements conveying such to Binns, Trooper Litt, or Niles.

On April 18, 2011, a five-day jury trial commenced. Prior to opening statements, the Jordans objected to the defendants' anticipated use of the Crash Report as a demonstrative aid during opening statements, on the basis that the court had not yet made a final determination as to whether it would be admissible. The district court overruled the objection, explaining that opening statements provide a roadmap for the jury and are not evidence. During trial, in addition to the testimonial and documentary evidence concerning Betty's on-scene statements, the jury heard Binns testify that he was an experienced truck driver who had driven through the particular curve on I-70 almost every working day for ten years and that he was confident his truck had

not veered into Betty's lane. For her part, Betty testified that she remained in the left-hand portion of her lane the entire time and that Binns's trailer had migrated toward her and caused the accident. But Binns's expert witness testified that, based on a forensic reconstruction, the accident could not have occurred as Betty claimed; according to the expert, Betty's tires had been on the white lines dividing the lanes at the time of impact, meaning that Betty's motorcycle had been encroaching about 18 inches into Binns's lane. Another expert called by Binns testified that Betty had not exercised reasonable care in operating her motorcycle.

On appeal,[1] the Jordans challenge the admissibility of several pieces of evidence, all of which the defense offered to show that Betty admitted fault at the scene. They contend that each piece of evidence consists of multiple layers of hearsay and should have been excluded under the hearsay rule, *see* Fed. R. Evid. 802, 805. (Although the Federal Rules of Evidence were amended after the trial in this case, effective December 1, 2011, those amendments were merely stylistic, so we will cite the current version unless otherwise noted.) We review a district court's evidentiary rulings for an abuse of discretion, and, if we find an abuse, we then deter-

---

[1] Oral argument in this case was held at the Indiana University Maurer School of Law in Bloomington, Indiana. We thank the law school's students, staff, and faculty for their generous hospitality. We also thank the parties for their patience and counsel for their vigorous advocacy.

mine whether the error was harmless. *United States v. Earls*, 704 F.3d 466, 470 (7th Cir. 2012).

"Hearsay," in its simplest terms, is an out-of-court statement offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."). As a general rule, hearsay is not admissible. Fed. R. Evid. 802. But the Federal Rules of Evidence (FRE) contain numerous exceptions to the rule against hearsay. *See* Fed. R. Evid. 803, 804. Additionally, FRE 801(d) exempts or excludes from the definition of "hearsay" certain statements that otherwise would be hearsay. And "statements . . . that comprise multiple levels of potential hearsay are admissible if each part is admissible." *United States v. Green*, 258 F.3d 683, 690 (7th Cir. 2001) (citations omitted); *see* Fed. R. Evid. 805.

The Jordans argue that the following six pieces of testimonial and documentary evidence should have been excluded: (1) the statement in the Crash Report reciting that Ted had told Trooper Litt that Betty had told Ted that the accident had been her fault; (2) the statement in the Crash Report reciting that Binns had told Trooper Litt that Betty had told Binns that the accident had been her fault; (3) Trooper Litt's trial testimony that Ted told him that Betty had told Ted that the accident had been her fault; (4) Trooper Litt's trial testimony that Binns told him that Betty had told Binns that the accident had been her fault; (5) the state-

ment in the Adjuster's Report reciting the Crash
Report statement reciting that Ted had told Trooper
Litt that Betty had told Ted that the accident had been
her fault; and (6) Niles's trial testimony that Binns had
told him that Ted had told Binns that Betty had told
Ted that the accident was her fault. And because, in
their view, the Crash Report contains inadmissible
hearsay, the Jordans also assert that the district court
erred in allowing defense counsel to employ the Crash
Report as a demonstrative aid during opening statements.

It is easy to get lost in the "he said, he said, she said"
of these pieces of evidence, but close examination
reveals that only three chains of communication are
at issue (multiple links in two of those chains are chal-
lenged). The following diagram[2] is helpful:

---

[2] The asterisks identify the eight links in these three chains of
communication admitted into evidence. The Jordans chal-
lenge only six of those links; they do not challenge Binns's
trial testimony.



The first or inner-most layer of potential hearsay in each piece of evidence is a statement from Betty that the accident was her fault, not the trucker's. The Jordans wisely concede that Betty's statements are nonhearsay statements (also called "admissions") by a party-opponent under FRE 801(d)(2)(A), *see, e.g.*, *United States v. Spiller*, 261 F.3d 683, 690 (7th Cir. 2001), and they do not seek to have Betty's statements deemed inadmissible on alternative grounds, *cf. Mister v. Ne. Ill. Commuter R.R. Corp.*, 571 F.3d 696, 699 (7th Cir. 2009) (applying FRE 403 to exclude nonhearsay party admission). So the first layer of potential hearsay in each of the challenged pieces of evidence is not hearsay.

Binns's statements about what Betty said constitute the second layer of potential hearsay in two of the six challenged pieces of evidence (and the third layer in Niles's trial testimony). Although Binns is a party to this action, the evidence including his statements was offered *by*

him, not *against* him, so his statements do not qualify as admissions by a party-opponent under FRE 801(d)(2)(A). *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996). For the most part, the defendants make no attempt to show that Binns's statements fall into another definitional exclusion or hearsay exception. Indeed, they concede that it was error to allow Niles to testify as to what Binns said that Ted said that Betty said, but they argue that it was harmless, which we discuss later.

The second layer of potential hearsay in the remaining pieces of evidence consists of Ted's statements to others that Betty said the accident was her fault. Ted, of course, is a party to this action by way of his loss-of-consortium claim, which is derivative of Betty's claim for negligence, *see Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 764 (Ind. 2001), and his statements were offered by the defendants. Yet the plaintiffs urge that Ted's statements are not party admissions under FRE 801(d)(2)(A) because they were not his *own* statements in that he merely repeated Betty's statements. They cite no authority to support their position. The defendants, relying solely on a prior district court decision, *In re Greenwood Air Crash*, 924 F. Supp. 1511, 1515 (S.D. Ind. 1995) (air-crash accident victims' statements were party admissions, and victims' wives' statements repeating what victims had told them were also party admissions because wives were plaintiffs as well), say that Ted's statements are party admissions. It is true, as the Jordans point out, that *Greenwood Air Crash* is not binding, but our analysis of the issue leads us to the same conclu-

sion, namely, that Ted's statements are admissible as nonhearsay statements by a party-opponent.

Rule 801(d)(2)(A) provides that a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party in an individual or representative capacity." The definitional exemption for individual admissions is extraordinarily broad. *See* Fed. R. Evid. 801(d)(2) advisory committee's note (calling "for generous treatment of this avenue to admissibility"); C.B. Mueller, L.C. Kirkpatrick & C.H. Rose III, *Evidence Practice Under the Rules* § 8.27, at 909 (4th ed. 2012) (exemption for individual admissions "has almost infinite breadth"). Treating party admissions as nonhearsay is rooted in the nature of the adversarial system, and trustworthiness is not a requirement for admission. Fed. R. Evid. 801(d)(2) advisory committee's note; *United States v. McKeon*, 738 F.2d 26, 32 (2d Cir. 1984). There is less concern about trustworthiness, especially in civil cases, because the party against whom the statements are offered generally can take the stand and explain, deny, or rebut the statements. *See Jones v. Nat'l Am. Univ.*, 608 F.3d 1039, 1045 (8th Cir. 2010); 2 *McCormick on Evidence* § 245, at 125 (6th ed. 2006). Because trustworthiness is not the touchstone for admissibility of party admissions, they are not subject to the personal-knowledge requirement of FRE 602, *e.g.*, *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761, 763 (7th Cir. 2002); *cf. United States v. Lindemann*, 85 F.3d 1232, 1237-38 (7th Cir. 1996), or the restrictions of the opinion rule of FRE 701, *Russell v. United Parcel Serv., Inc.*, 666 F.2d 1188, 1190-91 (8th Cir. 1981). *See also* Fed. R. Evid. 801(d)(2) advisory committee's

note. Moreover, party admissions need not be inculpatory or against interests. *United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000); *United States v. McGee*, 189 F.3d 626, 631-32 (7th Cir. 1999). There are only two requirements for admissibility under FRE 801(d)(2)(A): a statement was made by a party, and the statement was offered against that party. *See United States v. Matlock*, 415 U.S. 164, 172 & n.8 (1974); *United States v. Penaloza*, 648 F.3d 539, 547 (7th Cir. 2011).

The Jordans contend, in essence, that a party *makes* his or her *own* statement only when he or she asserts an original thought and that an assertion of another's original thought is outside the scope of FRE 801(d)(2)(A). They derive this "original thought" requirement from the text of the prior version of FRE 801(d)(2)(A), which provided that "[a] statement is not hearsay if . . . [it] is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity," 2 *McCormick on Evidence*, *supra*, app. A, at 682. The first problem with the Jordans' argument is that the current version of FRE 801(d)(2)(A) does not employ the term "own," and although the prior version applied to the Jordans' trial, the 2011 amendments were not intended to alter substance, so the word "own" cannot have the effect the Jordans claim it does. Fed. R. Evid. 801 advisory committee's note. The second problem is that the Jordans' argument flows from the faulty premise that Ted's statements are the same as Betty's. They are not. The truth of the matter asserted by Betty is that the accident was her fault, but the truth of the matter asserted by Ted is that Betty said the accident was her fault. (Had Ted said the accident was Betty's fault, the statement would

still be an admission even though Ted had no personal knowledge.) It is difficult to see how Ted's statement is not his own when its substance differs from Betty's statements. (The parties do not suggest that this case involves adoptive admissions under FRE 801(d)(2)(B).)

Our independent research has turned up only one case that arguably supports the Jordans' position. In *Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626, 629 (8th Cir. 1978), one of the defendants taped a note to his boss's office door indicating that one of the canid center's wolves had bitten a child. The Eighth Circuit held that the note was not hearsay and was admissible against the defendant under Rule 801(d)(2)(A), remarking that "[i]t was his own statement, *and as such was clearly different from the reported statement of another*. Example, 'I was told that . . . .'" *Id.* at 630 (emphasis added) (ellipsis in original). While at first blush this case appears helpful to the Jordans, closer analysis reveals otherwise. *Mahlandt* cited *Cedeck v. Hamiltonian Federal Savings & Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977), in which the court applied FRE 805 to hold that the part of the party's "statement which contains a reiteration of what someone told him is not admissible as an admission by a party-opponent since the author of the statement is unknown." Several other courts have followed *Cedek* and have applied FRE 805 to party admissions to hold that an admission repeating another's statement is admissible only if the other person's statement is itself an admission or falls within an exception to the hearsay rule. *See, e.g.*, *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 34 (1st Cir. 1998) ("unattributed

statements repeated by party-opponents cannot be admissible"); *Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988) (excluding unattributed hearsay repeated by party-opponent). Here, however, the author of the reported statement (Betty) is known and her statement is itself a party admission. Thus, assuming without deciding that these cases properly applied FRE 805 (notwithstanding the fact that personal knowledge is not required for admissions), they do not furnish support for the Jordans because the statements reported by Ted (i.e., Betty's statements) are not barred by the hearsay rule; in point of fact, these cases actually support the district court's decision to admit Ted's statements.

It is true that there is not an overwhelming body of case law supporting the defendants' position, but there are some cases. *See, e.g.*, *Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 970 (4th Cir. 1987) ("that [A] testified that [B] had told [A] what [C] had said provides no basis for exclusion," where both the statement from C to B and the statement from B to A constituted admissions under FRE 801(d)(2)(D)). Indeed, it appears that this court already rejected the basic premise of the Jordans' argument in *United States v. Hubbard*, 22 F.3d 1410 (7th Cir. 1994). In that case, the government submitted into evidence taped recordings of Anderson's phone conversations with Hubbard, which had occurred after Anderson had been arrested and was in police custody. The court found that Anderson's statements were voluntary and that they were nonhearsay admissions of a party-opponent under FRE 801(d)(2)(A). *Id.*

at 1417. Anderson contended that FRE 801(d)(2)(A) was inapplicable because it applies only to a party's "own statement," and his statements had been "made at the bequest of the police and were, therefore, not his own," but the court rejected this argument, explaining that it was simply another attempt to challenge the voluntariness of his statements. *Id.* at 1417 n.2.

The Sixth Circuit has also rejected an argument similar to that pressed by the Jordans. In *Jewell v. CSX Transportation, Inc.*, 135 F.3d 361, 362-63 (6th Cir. 1998), a husband, a wife, and their six-year-old daughter Brittney were in a pickup truck that collided with a train; the mother and Brittney sued CSX for negligence (the husband was killed in the accident). At trial, CSX introduced testimony from multiple witnesses indicating that Brittney had told them that her parents had been arguing immediately before the collision and that, when she told them a train was coming, they told her to be quiet. Plaintiffs offered evidence that Brittney had suffered brain damage, had no memory of the accident, and likely had overheard conversations among family members speculating that the accident had been the result of the parents' arguing. On appeal, plaintiffs contended that Brittney's statements should not have been admitted on the ground that they were not made in her "individual" capacity because she had no "independent" recollection of the accident, on account of her brain injuries. The court rejected this argument, reasoning that plaintiffs "have confused the terms 'independent' and 'individual.' 'Independent' and 'individual' are not synonymous. Brittney was the source of the statements. She made the statements in her indi-

vidual capacity, whether or not she had an independent recollection of the matters she spoke about." *Id.* at 365. Similarly, in this case, Ted's statements were made in his individual capacity.

Ted's statements qualify as statements by a party-opponent under FRE 801(d)(2)(A). (Given our resolution of that issue, we do not address the defendants' alternative theory that Ted's statements qualify as excited utterances under FRE 803(2).) It is undisputed that Ted is a party and that his alleged statements were offered against him. It is also clear that Ted "made" the statements—i.e., they were spoken by him. Ted had the opportunity at trial to deny that he made those statements, an opportunity of which he availed himself, and it was within the jury's province to determine whether Ted did or did not make them.

So now we have enough information to address the Jordans' challenges to Trooper Litt's trial testimony, in which the following exchange between defense counsel and Trooper Litt occurred:

Q:  What did [Ted] say?

A:  He stated that while she was on scene, he asked what happened; and she stated, "I'm sorry. I'm sorry. It's not the trucker's fault. It was mine."

. . . .

Q:  Did [Binns] tell you anything relative to what [Betty] had said?

A:  He actually gave me the exact same statement almost verbatim. It was the same thing.

> "I'm sorry, I'm sorry. It wasn't the trucker's fault. It was mine."

The defendants contend that the Jordans forfeited any claims of error regarding Trooper Litt's testimony by failing to assert a contemporaneous objection, *e.g.*, *Griffin v. Foley*, 542 F.3d 209, 218-19 (7th Cir. 2008), and they argue that this is not an exceptional case warranting relief under the doctrine of plain error, *see Jackson v. Parker*, 627 F.3d 634, 640 (7th Cir. 2010). The Jordans respond that they did not need to object because they had done so earlier that day and their objections had been definitively overruled. *See* Fed. R. Evid. 103(b); *Wilson v. Williams*, 182 F.3d 562 (7th Cir. 1999) (en banc). Although we doubt that the Jordans properly preserved these claims of error, we will proceed as if they did because it is inconsequential to the outcome of this appeal.

The trial court did not abuse its discretion in allowing Trooper Litt to testify about what Ted said that Betty had said. Neither Betty's statement nor Ted's statement reporting Betty's statement constitutes hearsay, and the Jordans do not claim that the testimony should have been excluded on other grounds. But the trial court abused its discretion in allowing Trooper Litt to testify about what Binns said that Betty had said because, while Betty's statement was not hearsay, Binns's statement was inadmissible hearsay (the defendants do not argue otherwise).

This brings us to the Crash Report. In that report, Trooper Litt recorded the general "who, what, when,

where" observations customary for such reports. He also provided a narrative in which he documented statements from both Binns and Ted (he was unable to interview Betty, who had already been rushed to the hospital) and offered an opinion, based on what he had observed and heard, as to the cause of the accident. Prior to trial, the district court granted the Jordans' motion to exclude as untrustworthy Trooper Litt's opinions as to the cause of the accident; it reasoned that, although the investigation was timely and unbiased, Trooper Litt had been investigating accidents for only one year and had not conducted an accident reconstruction at the scene. *See* Fed. R. Evid. 803(8); *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 & n.11 (1988). Accordingly, the defendants redacted the portion of the Crash Report's narrative containing Trooper Litt's opinion and retained the remainder of the narrative, including the following two statements:

- D2 [Binns] stated that when he got to D1 [Betty] she had injuries to both her legs and D1 was stating, "I am sorry, I am sorry, it was not the trucker's fault, it was mine."

- D1's husband [Ted] also stated that D1 said, "I am sorry, I am sorry, it was not the trucker's fault, it was mine."

The district court subsequently rejected the Jordans' contention that the defendants had violated the previous order by not redacting the entire narrative.

These statements, of course, are essentially the same statements elicited from Trooper Litt during his trial

testimony, but because they were written into the Crash Report, they are out-of-court statements representing a third level of potential hearsay. The Jordans maintain that the statements, like Trooper Litt's opinion as to the cause of the accident, should have been excluded. The defendants, on the other hand, contend that they were properly admitted under FRE 803(8), which removes the hearsay bar for certain records and statements of public offices, *e.g.*, *United States v. Blackburn*, 992 F.2d 666, 671 (7th Cir. 1993).

The public-records exception is justified on the assumption that public officials will perform their duties properly and without bias. *See* Fed. R. Evid. 803(8) advisory committee's note; *United States v. De La Cruz*, 469 F.3d 1064, 1069 (7th Cir. 2006). Three categories of public records are covered by the exception, Fed. R. Evid. 803(8)(A)(i)-(iii) (formerly FRE 803(8)(A)–(C), respectively), and though there are important differences among the three, many public records fall into more than one category. *See* Mueller et al., *Evidence Practice Under the Rules*, *supra*, § 8.49, at 1008. The first category consists of records that set out a public office's activities. Fed. R. Evid. 803(8)(A)(i); *see, e.g.*, *Chesapeake & Delaware Canal Co. v. United States*, 250 U.S. 123, 128-29 (1919) (Treasury records); *United States v. Lechuga*, 975 F.2d 397, 399 (7th Cir. 1992) (court records). The second category encompasses records that set out "a matter observed while under a legal duty to report," though there is an exception to the exception in the context of criminal cases for matters observed by law-enforcement personnel. Fed. R. Evid. 803(8)(A)(ii); *see, e.g.*, *United States v. Meyer*,

113 F.2d 387, 397-98 (7th Cir. 1940) (map prepared by government engineer based on data compiled from workers under his supervision). The third category is comprised of records setting forth "factual findings from a legally authorized investigation" (though in criminal cases they may be used only against the government), Fed. R. Evid. 803(8)(A)(iii), which includes evaluative reports containing opinions and conclusions. *See Beech Aircraft Corp.*, 488 U.S. at 166-70; *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 624 (7th Cir. 2003) (administrative findings concerning discrimination claims). Records falling into one of these categories are presumptively admissible but may be excluded, in the court's discretion, if the party opposing admission establishes that the circumstances indicate a lack of trustworthiness. Fed. R. Evid. 803(8)(B); *see also United States v. Romo*, 914 F.2d 889, 896 (7th Cir. 1990).

As explained above, the defendants have failed to identify a hearsay exception applicable to Binns's statement to Trooper Litt (and Binns's statement to Niles) and have essentially conceded that admission of Trooper Litt's testimony regarding that statement (as well as Niles's testimony concerning what Binns said) was error. One might expect them to concede similarly that Binns's statement as recorded in the Crash Report should have been excluded because, under FRE 805, each layer of hearsay must be admissible on an independent basis. But they do not. Rather, relying on *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1304-08 (7th Cir. 1992) (per curiam), which held that expense reports of French communes were admissible as public records,

the defendants contend that FRE 803(8) is a multi-level exception that covers all hearsay contained in a public record and that the report can be excluded only if the party opposing admission sufficiently establishes that the report is untrustworthy. The defendants misread that decision.

*Amoco Cadiz* merely acknowledges the reality that information may be passed among multiple public officials before being recorded in a document offered at trial, and it holds that the record will not be excluded merely because its author does not have firsthand knowledge of the reported matters. *Id.* at 1308; Mueller et al., *Evidence Practice Under the Rules, supra*, § 8.49, at 1008; *cf. Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1309-10 (5th Cir. 1991) ("[M]any government reports, as with many expert witnesses, have to rely in part on hearsay evidence, and the reports are not generally excluded for this reason."). It does *not* suggest that FRE 803(8) removes the hearsay bar for a statement from a nongovernmental third-party contained in a police report. On the contrary, "[p]olice reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer." Fed. R. Evid. 803(8) advisory committee's note. This is because the presumption of reliability that serves as the premise for the public-records exception does not attach to third parties who themselves have no public duty to report. *See* 4 C.B. Mueller & L.C. Kirkpatrick, *Federal Evidence*, §§ 8.86, 8.88, at 770-71, 783-84 (3d ed. 2007). Accordingly, third-party statements contained in a police report do not become admissible for their truth

by virtue of their presence in a public record and instead must have an independent basis for admissibility. *See United States v. Wyatt*, 437 F.2d 1168, 1170 (7th Cir. 1971); *see also, e.g.*, *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006); *United States v. Mackey*, 117 F.3d 24, 28-29 (1st Cir. 1997); *Miller v. Field*, 35 F.3d 1088, 1091-92 (6th Cir. 1994); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991); *United States v. Snyder*, 787 F.2d 1429, 1434 (10th Cir. 1986); *United States v. De Peri*, 778 F.2d 963, 976-77 (3d Cir. 1985); *United States v. Pazsint*, 703 F.2d 420, 424-25 (9th Cir. 1983); *United States v. Smith*, 521 F.2d 957, 964-65 (D.C. Cir. 1975). So, irrespective of whether the Crash Report is a public record, Binns's statement contained therein should have been excluded.

Much of the Jordans' argument that Ted's statement should have been excluded is premised on their incorrect view that Ted's statement does not qualify as a statement by a party-opponent. Yet they also contend that the Crash Report, as admitted into evidence, does not qualify as a public record under FRE 803(A)(iii) because it does not contain "factual findings" and is not trustworthy. The unredacted Crash Report authored by Trooper Litt undoubtedly constituted an evaluative report entitled to the presumption of trustworthiness. *See, e.g.*, *Lubanski v. Coleco Indus., Inc.*, 929 F.2d 42, 45-46 (1st Cir. 1991). The district court found that the Jordans had satisfied their burden of showing that Trooper Litt's opinions and conclusions regarding the accident's cause were untrustworthy, and the defendants have not challenged that ruling. Accordingly, the court redacted those portions of the Crash Report and allowed the re-

mainder into evidence, which is permitted, *see, e.g.*, *De La Cruz*, 469 F.3d at 1069.

The Jordans essentially contend that redaction of those conclusions took the Crash Report outside the scope of the public-records exception for evaluative reports. We disagree. It is true that "the requirement that reports contain factual findings bars the admission of statements not based on factual investigation." *Beech Aircraft Corp.*, 488 U.S. at 169. And it has been held that a transcript of a third party's statement generally does not constitute a "factual finding." *See United States v. Ortiz*, 125 F.3d 630, 632 (8th Cir. 1997); *United States v. D'Anjou*, 16 F.3d 604, 610 (4th Cir. 1994). But those cases involved third-party statements that met the definition of hearsay and did not fall into any of the exceptions to the hearsay rule, and the "reports" in several of the cases were merely transcripts of interviews with third parties. In contrast, the Crash Report was not merely a transcript; along with Ted's and Binns's isolated statements, it contained Trooper Litt's on-scene observations and the conclusions that he reached based on all of the evidence he had collected. We do not think the exclusion of Trooper Litt's opinions and conclusions removes the Crash Report from the scope of the exception for evaluative reports. Even if the redacted Crash Report is not an evaluative report, it is a record of matters observed by Trooper Litt under a legal duty to report. Fed. R. Evid. 803(8)(A)(ii); *Dortch v. Fowler*, 588 F.3d 396, 403 (6th Cir. 2009); *De Peri*, 778 F.2d at 977. Either way, the Crash Report is a public record entitled to the presumption of trustworthiness.

The Jordans argue that the Crash Report was untrustworthy seemingly for two reasons, namely, that Ted's statement is hearsay and that Ted denies having made the statement. Again, Ted's statement is a party admission and therefore is not hearsay. That the exclusion of party admissions from the definition of hearsay is based on the nature of our adversarial system, rather than any indicia of reliability, is no reason to find the Crash Report or Ted's statement therein to be untrustworthy. *Cf. Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996) ("The fact of admission is a badge of reliability sufficient to overcome the hearsay objection to out-of-court statements offered for their truth. People usually don't make damaging admissions unless they are true."). There is absolutely no indication that Trooper Litt was biased—indeed, the district court found otherwise. Furthermore, Ted's denial of having made the statement goes to the credibility of the evidence, not its admissibility. *See Moss*, 933 F.2d at 1306-08. The Jordans have not met their burden of showing that Trooper Litt used untrustworthy methods in authoring the unredacted portions of the Crash Report. Thus, the district court did not abuse its discretion in admitting the portion of the Crash Report recording Ted's statement reciting what Betty had said: neither Betty's nor Ted's statements are hearsay, and the Crash Report itself is an admissible public record. *See Clark v. Clabaugh*, 20 F.3d 1290, 1294-95 (3d Cir. 1994) (no error in admitting state police report containing party admissions); *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 559 (6th Cir. 1978) (no error in admitting police report containing witness's

nonhearsay prior consistent statements under FRE 801(d)(1)(B)); *cf. Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987) (no error in admitting medical record containing party admissions).

The Jordans also claim that the district court erred in allowing defense counsel to use the Crash Report as a demonstrative aid during opening statements. This argument is woefully underdeveloped, consisting mostly of conclusory statements and lacking pertinent legal authority, so it is waived. *See, e.g.*, *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) ("We have repeatedly held that undeveloped arguments are considered waived." (citations omitted)). Waiver aside, we find no reversible error. In responding to the Jordans' objection, the district court explained that defense counsel "is not to argue. He simply is going to say what his evidence will prove; and if it doesn't, then he does that at his peril." This was a correct statement of the law. *E.g.*, *Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443, 446 (7th Cir. 1996). Additionally, the jury was instructed that "the lawyers' opening statements and closing arguments to you are not evidence." Providing a curative instruction protects against any prejudice resulting from a lawyer's reference during opening statements to evidence that ultimately is not admitted during trial. *Id.*; *cf. United States v. Catalfo*, 64 F.3d 1070, 1081 (7th Cir. 1995). And the Jordans have offered no reason for us to conclude that the jury did not follow its instructions.

The final piece of evidence at issue in this appeal is the Adjuster's Report. In preparing that report, Niles

consulted the Crash Report and included the following statement in the Adjuster's Report: "The officer noted on the report that the claimant's husband arrived at the scene prior to the claimant driver being transported. Mr. Jordan told the officer his wife told him the accident was her fault and not the truck driver's." The Jordans maintain that the district court abused its discretion in admitting the Adjuster's Report as a business record under FRE 803(6).

The business-records exception removes the hearsay bar for records kept in the course of a regularly conducted business activity if making the records is a regular practice of that business activity, so long as "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6); *see Coates v. Johnson & Johnson*, 756 F.2d 524, 549 (7th Cir. 1985); *United States v. Chappell*, 698 F.2d 308, 311 (7th Cir. 1983). Such records are presumed reliable because businesses depend on them to conduct their own affairs, so there is little if any incentive to be deceitful, and because the regularity of creating such records leads to habits of accuracy. *See United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993); Fed. R. Evid. 803(6) advisory committee's note; *see also Lust v. Sealy, Inc.*, 383 F.3d 580, 588 (7th Cir. 2004) ("Because a business depends on the accuracy of its recordkeeping, its records, although not sworn, are likely to be at least reasonably accurate, or at least not contrived for the purpose of making the business look better if it is sued.").

It is well established, though, that documents prepared in anticipation of litigation are not admissible under

FRE 803(6). *See Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009); *Lust*, 383 F.3d at 588; *Blackburn*, 992 F.2d at 670; *Bracey v. Herringa*, 466 F.2d 702, 704-05 (7th Cir. 1972); *United States v. Ware*, 247 F.2d 698, 700 (7th Cir. 1957); *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1091 (10th Cir. 2001); *Scheerer v. Hardee's Food Sys., Inc.*, 92 F.3d 702, 706-07 (8th Cir. 1996). Litigation generally is not a regularly conducted business activity. *AMPAT/ Midwest, Inc. v. Ill. Tool Works Inc.*, 896 F.2d 1035, 1045 (7th Cir. 1990); *see Palmer*, 318 U.S. at 114 (accident report created by railroad employee after an accident was not a business record because its "primary utility [was] in litigating, not in railroading"); *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir. 1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business."). And documents prepared with an eye toward litigation raise serious trustworthiness concerns because there is a strong incentive to deceive (namely, avoiding liability). *See Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942) (Frank, J.) (documents prepared for litigation are "dripping with motivations to misrepresent"), *aff'd*, 318 U.S. 109; *Lust*, 383 F.3d at 588; *AMPAT/Midwest, Inc.*, 896 F.2d at 1045; *Bracey*, 466 F.2d at 704-05; *see also* Fed. R. Evid. 803(6) advisory committee's note ("Absence of routineness raises lack of motivation to be accurate."); *cf. Leon v. Penn Cent. Co.*, 428 F.2d 528, 530 (7th Cir. 1970) (accident report prepared in anticipation of litigation at defendant's behest was admissible where it was offered

by plaintiff); *Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999) (same).

Here, U.S. Xpress hired Niles to prepare the Adjuster's Report and then offered that report into evidence at trial. It is difficult to see what purpose, other than preparing for litigation, is served by an insurance adjuster's report created after an accident investigation. Had Binns or another employee of U.S. Xpress created the report, then it would clearly not be a business record under *Palmer* and its progeny because U.S. Xpress's business is trucking, not litigation. This case, however, presents an added wrinkle because Niles was not an employee of U.S. Xpress. Yet this is a distinction without a difference. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000) ("Litigants cannot evade the trustworthiness requirement of Rule 803(6) by simply hiring an outside party to investigate an accident and then arguing that the report is a business record because the investigator regularly prepares such reports as part of his business. If that were the case, parties that face litigious situations could always hire such nonaffiliated firms and investigators to prepare a report and then seek to admit the document over hearsay objection."); *see also Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 (9th Cir. 1984) (audit performed by third-party accounting firm was not a business record because it was commissioned only after accounting problems were suspected). The primary motive for commissioning reports such as the Adjuster's Report "is a better indicator of trustworthiness than the form of the investigation or the identity of

the investigator," *Sinkovich*, 232 F.3d at 205. Moreover, a nonaffiliated investigator may have pecuniary motives to skew a report in favor of the client that hired him, for a damaging report may result in the client looking elsewhere next time around.

We conclude that the district court abused its discretion in admitting the Adjuster's Report into evidence. The Jordans carried their burden of showing that the Adjuster's Report was an untrustworthy document prepared in anticipation of litigation. *See Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1010 (8th Cir. 2002) (opponent of business record bears burden of demonstrating untrustworthiness); *Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 118 (5th Cir. 1997) (same).

To recap, the district court did not abuse its discretion in admitting either Trooper Litt's testimony regarding what Ted told him that Betty had said or the statement in the Crash Report reflecting the same; each layer of potential hearsay either is not hearsay or qualifies under an exception to the hearsay rule. (Also, the Jordans have failed to show error in the district court's allowing defense counsel to use the Crash Report as a demonstrative aid during opening statements.) In contrast, the evidence (from Trooper Litt and Niles) regarding what Binns said Betty or Ted had said should not have been admitted because Binns's out-of-court statements are hearsay and the defendants have failed to identify an applicable exception. Additionally, the Adjuster's Report should not have been admitted because it was

an untrustworthy litigation document. Our diagram[3] therefore looks like this:



So the Jordans have established that the district court made a few evidentiary errors, but they are not entitled to a do-over if those errors were harmless, *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012). Rather, to

---

[3] The asterisks identify the links in the chains of communication admitted into evidence. The "Xs" indicate inadmissible hearsay. The asterisked links that are struck through represent the pieces of evidence that should have been excluded, while the asterisked links that are italicized represent the properly admitted pieces of evidence.

obtain a new trial they must demonstrate that there is a significant chance that at least one of the errors affected their substantial rights, that is, that an error likely had a substantial effect on the jury's verdict and the result was inconsistent with substantial justice. *See* Fed. R. Civ. P. 61; Fed. R. Evid. 103(a); *Whitehead*, 680 F.3d at 930; *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 564-65 (7th Cir. 2006). Harmless-error analysis is case-specific and requires an examination of the error(s) in light of the entire record. *See Kotteakos v. United States*, 328 U.S. 750, 762-65 (1946). While there is no magic formula for determining if an error was harmless, useful considerations include (but are not limited to) whether the erroneously admitted evidence went to a central issue, whether it was cumulative of other properly admitted evidence, and the strength of the properly admitted evidence. *See Lemons v. Skidmore*, 985 F.2d 354, 359 (7th Cir. 1993); *Lubanski*, 929 F.2d at 46; *cf. Jones v. Basinger*, 635 F.3d 1030, 1052 (7th Cir. 2011). Where there are several errors, each of which is harmless in its own right, a new trial may still be granted if the cumulative effect of those otherwise harmless errors deprives a litigant of a fair trial. *See Christmas v. City of Chicago*, 682 F.3d 632, 643 (7th Cir. 2012).

All six pieces of evidence at issue in this appeal were offered to establish that Betty had claimed fault for the accident. But this was not the only evidence concerning Betty's statements. At trial, Binns, who was called to testify during the Jordans' case-in-chief, testified on examination by both plaintiffs' counsel and defense counsel that he had heard Betty say the accident was

her fault and that Ted had told him that Betty had told Ted the accident was her fault. U.S. Xpress claims manager Keri Bukovitz also testified, without objection, that Binns had told her that Betty had said the accident was her fault. And although the Jordans successfully challenged one statement from Niles's trial testimony, they do not challenge Niles's testimony that "[Ted] indicated to me that, 'Your truck driver did nothing wrong and that my wife said that your truck driver—your driver did nothing wrong.'" Therefore, our comprehensive diagram[4] looks like this:

---

[4]  Again, the asterisks identify the links in the chains of communication admitted into evidence. The asterisked links that are struck through represent the pieces of evidence that should have been excluded, while the asterisked links that are italicized represent the properly admitted (or unchallenged) pieces of evidence.

| Betty | → | Ted | → | *Trooper Litt** | → | *Crash Report** | → | ~~Adjuster's Report*~~ |
|---|---|---|---|---|---|---|---|---|
| Betty | → | *Binns** | → | ~~*Trooper Litt**~~ | → | ~~*Crash Report**~~ | | |
| Betty | → | Ted | → | *Binns** | → | ~~*Niles**~~ | | |
| Betty | → | *Binns** | → | *Bukovitz** | | | | |
| Betty | → | Ted | → | *Niles** | | | | |

As a general rule, errors in admitting evidence that is merely cumulative of properly admitted evidence are harmless. *Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1397 (7th Cir. 1994); *see, e.g.*, *United States v. Kane*, 944 F.2d 1406, 1412 n.2 (7th Cir. 1991) (erroneous admission of report harmless where report merely reiterated agent's testimony); *Pincus v. Pabst Brewing Co.*, 893 F.2d 1544, 1554 (7th Cir. 1990) (even if admission of attorney's notes were error it was harmless because notes were "so thoroughly cumulative of" other evidence "that the error was not prejudicial"); *cf. Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1047-48 (7th Cir. 2000) (erroneous exclusion of cumulative evidence was harmless).

The Jordans argue, without citing any authority, that the fact that the evidence was cumulative increases the likelihood that the errors were prejudicial. Their argument sounds more like an argument that the evidence should have been excluded as unduly cumulative under FRE 403. *Cf. United States v. McKibbins*, 656 F.3d 707, 712-13 (7th Cir. 2011). The problem, however, is that they did not seek to have the evidence excluded on this ground in the trial court and, if they did, they do not couch their arguments on appeal in terms of FRE 403. They also point out that the district judge acknowledged that some of the challenged evidence was prejudicial, and they contend that this demonstrates the errors were not harmless. But even under FRE 403, the fact that evidence is even highly prejudicial is not sufficient to warrant exclusion; the evidence must be unfairly prejudicial in that it may induce the jury to reach a verdict on an improper ground, such as emotion, instead of the evidence presented. *See, e.g.*, *United States v. Zahursky*, 580 F.3d 515, 525 (7th Cir. 2009).

Not only was the improperly admitted evidence cumulative, but the other evidence presented at trial strongly favored the defendants' position. The jury heard that Binns was an experienced truck driver who traveled this stretch of I-70 approximately 3,000 times over the previous ten years; that when driving through a curve he compensates to ensure his trailer takes the same path as the rear tires of his tractor; and that his goal is to "hold the line" and maintain his lane position through the curve. Betty, on the other hand, had not obtained her motorcycle operator's license until 2005;

was riding a very large motorcycle; was traveling in the left-hand portion of the right lane as she traveled through the curve; and would have had to merge into the center lane soon after making it through the curve, had the accident not occurred. There was also expert testimony demonstrating that Binns could not have been at fault based on principles of inertia, as well as expert testimony that Betty had not been operating her motorcycle in a reasonable manner. (The Jordans also had an expert but they failed to include that evidence in the record, so for purposes of appeal the defendants' experts' testimony is undisputed. *Cf. Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 435-36 (7th Cir. 2002).) Thus, even though the central issue at trial was fault, the cumulative nature of the improperly admitted evidence coupled with this additional evidence leads us to conclude that the improper evidence did not have a substantial effect on the jury's verdict.

The judgment is AFFIRMED.