**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2020[*]
Decided May 11, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-2791

| | |
|---|---|
| MATTHEW C. STECHAUNER, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 17-cv-582-jdp |
| PAUL S. KEMPER, et al., *Defendants-Appellants*. | James D. Peterson, *Chief Judge*. |

**O R D E R**

After he collapsed in his cell from respiratory distress, Michael Stechauner, a Wisconsin prisoner, sued two correctional officers and a nurse for deliberate indifference to his serious medical need, and the warden for retaliating against him for filing grievances over his medical care. *See* 42 U.S.C. § 1983. A jury found in favor of the warden and the officers, and the district court entered a default judgment against the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

nurse. Stechauner appeals, challenging only the district court's denials of his requests for recruited counsel and his motion for issuance of trial subpoenas. We affirm.

Stechauner, who was housed at Racine Correctional Institution in 2015, suffers from respiratory issues. Over the course of two weeks, he complained to guards about chest pains, dizziness, and difficulty breathing. On October 28, he collapsed in his cell with blood coming out of his mouth, became unresponsive, and had to be hospitalized. He later filed several grievances over his medical care. In November, the warden, Paul Kemper, recommended Stechauner's transfer to another prison based on his dissatisfaction with medical staff at Racine. Kemper did not have final authority over the decision, but a committee later approved the transfer.

In his complaint, Stechauner alleged that two correctional officers and a nurse knew that he had serious respiratory issues, including asthma attacks, shortness of breath, and a chronic cough (sometimes bloody), but they ignored his complaints of pain and difficulty breathing and deliberately denied him medical care. He also asserted that his transfer was retaliatory.

After Stechauner filed his complaint, he moved for attorney representation. He submitted evidence that he could read only at a sixth-grade level and said that a jailhouse lawyer who had been assisting him was soon to be transferred. He also asserted that he would struggle to prosecute his case because he suffered from mental illnesses, lacked sufficient access to the law library, and could not easily locate potential witnesses from his new prison. The complexity of the case, he continued, was beyond his capabilities because it would require medical evidence and expert testimony.

The district court denied the motion. It acknowledged that Stechauner made reasonable attempts to obtain counsel on his own and recognized his mental-health conditions, low level of education, limited access to the law library, and the loss of assistance from another inmate. Even so, it had "not seen evidence that any limitations [would] prevent him from litigating the case." And although the case involved medical claims, it was "too early to tell" whether expert testimony would be needed. If he needed information to locate witnesses, he could obtain it through discovery.

Eventually, the parties cross-moved for summary judgment, and Stechauner moved for a default judgment against the nurse, who had not answered the complaint. At the same time, he requested counsel again. The district court denied both motions for summary judgment, finding genuine factual issues about the guards' knowledge of and responses to Stechauner's respiratory symptoms and the warden's motivations for

transferring him. The clerk entered default against the nurse, but the district court deferred entry of judgment pending a showing of damages. (It later entered judgment against the nurse for $5,000, and Stechauner does not challenge that decision on appeal.) Finally, the court denied Stechauner's request for counsel because, in addition to the reasons given the last time, the nurse had now defaulted, so the case would not hinge on medical issues. Stechauner "simply need[ed] to tell his side of the story." The court then issued a lengthy order instructing Stechauner on what steps he should take next and how to prepare for trial.

Before trial, Stechauner filed three more requests for counsel, again citing his mental-health issues and limited education. He argued that the court had seen his performance at trial in another case, which was "not good" because he mumbled and spoke too quickly. He also asked the court to issue subpoenas for two witnesses (former inmates) and, because he lacked funds in his general account, to order the Wisconsin Department of Corrections to pay the service and witness fees from his release account—a special account that state prisoners must maintain separately from their general funds. *See* WIS. ADMIN. CODE DOC § 309.466.

The court denied the three motions for counsel because it was "still not convinced that [the] case was too difficult for Stechauner to litigate on his own." Stechauner had lost his other trial because he lacked evidence, not because he was not competent. And he could learn from that experience to improve his presentation in his next trial. With regard to the subpoenas, the court concluded that it did not have authority to order payment of litigation costs from inmate release accounts. In any event, declarations Stechauner had filed with his summary judgment motion showed that the testimony of his two proposed witnesses would only corroborate his own account of his symptoms and his exchanges with Kemper.

At trial, Stechauner delivered opening and closing statements (though the court had to remind him to slow down) and introduced several exhibits in support of his claims. He presented his own testimony in narrative form, describing his symptoms and his interactions with guards, nurses, and Kemper. The two correctional officers and the warden also testified. The first officer said that she did not realize how severe Stechauner's symptoms were but had notified the Health Services Unit when he complained of pain and was told that he would be placed on a call list. (Stechauner pointed out that this testimony was not born out by call logs.) The second officer acknowledged that Stechauner had complained of respiratory distress on the evening of his collapse but said Stechauner had instructed her not to call Health Services. When

she learned that Stechauner had collapsed, she immediately told the shift lieutenant and called for an ambulance at a nurse's instructions. And the warden testified that he recommended the transfer because Stechauner's grievances, in which he repeatedly complained about understaffing, led him to believe Stechauner would benefit from interacting with other medical personnel. The jury returned a verdict for the defendants.

On appeal, Stechauner first contends that, in denying his requests for counsel, the district court failed to consider his limited education and mental-health conditions. We review denials of requests for recruited counsel for abuse of discretion, evaluating whether the district court applied the proper legal standard and arrived at a reasonable conclusion using the facts in the record. *Pruitt v. Mote,* 503 F.3d 647, 649, 658 (7th Cir. 2007) (en banc). As relevant here (because Stechauner attempted to find counsel independently), the district court had to assess whether, given the difficulty of the case, Stechauner appeared competent to litigate it himself. *Olson v. Morgan,* 750 F.3d 708, 711 (7th Cir. 2014), citing *Pruitt,* 503 F.3d at 654.

Each time Stechauner requested counsel, the district court properly explored the nature of his claims, assessed their difficulty, and weighed their complexity against his ability to litigate the case himself. After the nurse defaulted, the court identified the remaining issues for trial as being straightforward: whether the guards knew of his (undisputed) serious medical need and responded adequately, and whether Kemper had retaliatory motives for recommending his transfer. Though the case was of a medical nature, the standard of appropriate medical care was not an issue at trial.

The court also assessed Stechauner's competence to litigate his case as it advanced to trial. *See Walker v. Price,* 900 F.3d 933, 938–39 (7th Cir. 2018). Acknowledging his limited education and mental illnesses, it monitored his filings after he said that his jailhouse lawyers could no longer assist him and concluded that they remained coherent and intelligible. And mindful of the difficulty of trying a case before a jury, it issued a detailed order instructing Stechauner on both procedural and substantive issues, including what he needed to prove, how to take testimony, and how to enter exhibits. Further, the court had observed and evaluated Stechauner's ability to present to a jury in another trial. Because the district court considered the relevant factors and gave sounds reasons for its decision, we cannot conclude that it abused its discretion in declining to recruit counsel.

Stechauner also contends that the district court erred in denying his requests for an order authorizing disbursements from his inmate release account to cover the costs

of serving two witnesses with trial subpoenas and paying their witness fees. He insists that this decision affected his ability to present crucial facts supporting his claims, but he offers no details.

We have not yet addressed whether district courts have authority to order Wisconsin prison officials to disburse funds from inmate release accounts to pay federal litigation costs other than the initial filing fee. But we do not reach the issue today because Stechauner has not informed us of any material information he desired from the two witnesses that he was unable to present through alternative means. *See Mason v. S. Ill. Univ. at Carbondale,* 233 F.3d 1036, 1047 (7th Cir. 2000); *McNeil v. Lowney,* 831 F.2d 1368, 1373–74 (7th Cir. 1987). At trial, he was able to recount his complaints of distress, requests for medical assistance to guards, and interactions with Kemper, and he supported his testimony with call logs, medical records, grievances, and records of his transfer. Further, the guards did not dispute that he complained to them, nor did Kemper dispute that the transfer recommendation was based in part on Stechauner's grievances. He therefore did not need corroboration on these points. Without any explanation of how the absence of the two former prisoners affected his ability to prove his claims, Stechauner has not persuaded us that the decision not to subpoena them affected the outcome of his case. *See Jordan v. Binns,* 712 F.3d 1123, 1137 (7th Cir. 2013).

AFFIRMED