The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 25, 2020

## 2020COA99

**No. 16CA2136, *People v. Tran* — Crimes — Second Degree
Burglary; Constitutional Law — Eighth Amendment —
Proportionality Review**

A division of the court of appeals affirms Daniel Roy Tran's
convictions for second degree burglary and possession of burglary
tools.

But the division remands for the trial court to conduct a new
abbreviated proportionality review of Tran's sentence considering
the supreme court's recent decision in *Wells-Yates v. People*, 2019
CO 90M. In so doing, the court of appeals addresses an issue of
first impression: whether second degree burglary is still a per se
grave and serious offense after *Wells-Yates*.

Applying the framework set out in *Wells-Yates*, the division
concludes that, in its second abbreviated proportionality review, the

trial court should not treat Tran's convictions for second degree burglary as per se grave and serious offenses, but should analyze the facts and circumstances of each offense to determine whether it is grave and serious.

COLORADO COURT OF APPEALS                                    2020COA99

---

Court of Appeals No. 16CA2136
El Paso County District Court No. 15CR986
Honorable Larry E. Schwartz, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Roy Tran,

Defendant-Appellant.

---

JUDGMENT AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE FURMAN
Welling and Pawar, JJ., concur

Announced June 25, 2020

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Stephen Arvin, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury found defendant, Daniel Roy Tran, guilty of second degree burglary and possession of burglary tools.  The trial court sentenced Tran to twenty-four years in the custody of the Department of Corrections (DOC).

¶ 2     On appeal, Tran mounts two challenges to his convictions and one challenge to his sentence.

¶ 3     Regarding his convictions, Tran contends that (1) the trial court abused its discretion and violated his constitutional right to confront the witnesses against him by admitting into evidence a document that contained inadmissible testimonial hearsay and (2) the prosecutor committed reversible misconduct during rebuttal closing argument.

¶ 4     Tran also contends that the trial court erred by denying his request for an extended proportionality review of his sentence.

¶ 5     Because we conclude that (1) the trial court did not abuse its discretion or violate Tran's Confrontation Clause rights by admitting the document and (2) the prosecutor did not commit reversible misconduct, we affirm Tran's convictions.

¶ 6     But we remand for the trial court to conduct a new abbreviated proportionality review of Tran's sentence considering

1

the supreme court's recent decision in *Wells-Yates v. People*, 2019 CO 90M.

## I.    The Burglary

¶ 7    Employees at a Colorado Springs Walmart caught Tran shoplifting from the store.  He tried to take eleven Blu-ray discs and one digital camera.  Together, these items were worth $300.

¶ 8    When the employees apprehended Tran, they looked him up in a database where Walmart records the names of shoplifters.  They discovered that Tran had been caught shoplifting from Walmart three times before.  They also discovered that, after the most recent shoplifting incident, on June 28, 2014, Walmart had issued Tran the following "trespass notice."



¶ 9     The trespass notice informed Tran that he was no longer

"allowed on property owned by [Walmart] . . . or in any area subject

to [Walmart's] . . . control." And it warned him that if he tried to enter Walmart property, Walmart "may contact law enforcement and request [he] be charged with criminal trespass."

¶ 10    Tran printed and signed his name under language in the trespass notice that said, in relevant part, "I have read and understand this Notice or, in the alternative, have had it read to me and understand and acknowledge that as of 28 day of June, 2014, I am prohibited from entering [Walmart] property."

¶ 11    The Walmart employees contacted the police, and Tran was arrested.

¶ 12    The trespass notice created a big problem for Tran because it showed that he "knowingly . . . enter[ed] unlawfully in" Walmart's property. § 18-4-203(1), C.R.S. 2019. This meant that the prosecution could charge him with second degree burglary, a class 4 felony, instead of just misdemeanor theft. *See id.*; § 18-4-401(2)(d), C.R.S. 2019.

¶ 13    The prosecution introduced the trespass notice, among other evidence, at trial.

¶ 14    After trial, the jury found Tran guilty of second degree burglary and possession of burglary tools.

4

¶ 15    Later, the trial court found that Tran had six previous felony convictions and adjudicated him a habitual criminal.  The habitual criminal statute required the trial court to sentence Tran to an aggregate of twenty-four years in the custody of the DOC.  *See* § 18-1.3-401(1)(a)(V)(A), C.R.S. 2019; § 18-1.3-801(2)(a), C.R.S. 2019.

## II.    The Trespass Notice

¶ 16    Tran contends the trial court erred, for two reasons, by admitting the trespass notice.  First, he contends that it contained inadmissible hearsay.  Second, he contends that it was testimonial evidence and that admitting it violated his constitutional right to confront the witnesses against him.  *See* U.S. Const. amends. VI, XIV.

¶ 17    We perceive no reversible error.

### A.    Hearsay

¶ 18    Hearsay is a statement other than one made by the declarant while at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  CRE 801(c).  A statement "is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him to be communicative."  CRE 801(a).

¶ 19     Generally, hearsay statements are inadmissible.  CRE 802.
But some statements are excluded from the rule against hearsay,
and are admissible, regardless of whether they are introduced for
the truth of the matter asserted.  *See generally* CRE 801(d).  And a
hearsay statement is admissible if it falls under one of the
enumerated exceptions to the hearsay rule.  *See generally* CRE 803,
804.

¶ 20     We review a trial court's evidentiary rulings for an abuse of
discretion.  *People v. Phillips*, 2012 COA 176, ¶ 63.

¶ 21     Tran construes the entire trespass notice as one statement.
The People counter that the trespass notice contains two distinct
statements.

¶ 22     We agree with the People that the trespass notice contains two
statements: (1) Walmart's statement that Tran is no longer allowed
on Walmart property and (2) Tran's statement that he read and
understood the notification.  *See* CRE 801(a).

¶ 23     We will analyze the admissibility of each statement in turn.

### 1.     Walmart's Statement

¶ 24     This statement read, in relevant part,

6

> This document constitutes formal notice and warning that you are no longer allowed on property owned by [Walmart] . . . or in any area subject to [Walmart's] . . . control. . . . Should you elect to ignore this Notice and enter [Walmart's] . . . property, [Walmart] . . . may contact law enforcement and request you be charged with criminal trespass.

¶ 25　We first conclude that Walmart's statement was hearsay. The statement asserted that Tran was "no longer allowed on" Walmart property. And, to prove that Tran committed second degree burglary, the prosecution had to prove that Tran "unlawfully" entered Walmart. § 18-4-203(1). Thus, the prosecution introduced Walmart's statement to prove the truth of the matter it asserted. *See* CRE 801(c).

¶ 26　The trial court admitted Walmart's statement under the business records exception, CRE 803(6). That exception allows a court to admit into evidence a "record" of

> acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

CRE 803(6).

¶ 27    Tran contends that Walmart's statement does not fall under the business records exception because it was created in anticipation of criminal litigation.  In support of this contention, Tran points us to

- a police officer's trial testimony suggesting that Walmart issues trespass notices so police can "potentially file burglary charges" against shoplifters;

- language from the trespass notice warning that Walmart "may contact law enforcement and request you be charged with criminal trespass"; and

- the prosecutor's comment during rebuttal closing argument that Walmart issues trespass notices because "you, ladies and gentlemen, get to see it.  Because this is them giving proof."

¶ 28    To address Tran's contention, we first need to step back and examine the rationale behind the business records exception and why documents prepared in anticipation of litigation do not fall within this exception.

¶ 29    The rationale behind the business records exception is that businesses have a strong incentive to keep accurate and reliable records of their regular affairs.  *See Schmutz v. Bolles*, 800 P.2d 1307, 1312 (Colo. 1990); *see also Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013) (explaining the rationale behind the similar federal rule).  And, "the regularity of creating such records leads to habits of accuracy."  *Jordan*, 712 F.3d at 1135.  Thus, business records are presumptively reliable.  *Id.*; *see also People v. Flores-Lozano*, 2016 COA 149, ¶ 20.

¶ 30    But documents prepared in anticipation of litigation do not have the same guarantees of reliability.  *Flores-Lozano*, ¶ 20; *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009); *Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943); *People v. Stribel*, 199 Colo. 377, 380, 609 P.2d 113, 115 (1980).  Unlike a business keeping records of its normal activities, a business preparing records for litigation has a strong incentive to portray the facts in a way that will help it avoid liability.  *Jordan*, 712 F.3d at 1135.  And businesses do not routinely prepare these documents.  *See Palmer*, 318 U.S. at 113-14; *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir. 1995) ("[O]ne who prepares a document

in anticipation of litigation is not acting in the regular course of business."). Thus, documents prepared in anticipation of litigation are presumptively unreliable and are not admissible under CRE 803(6). *Flores-Lozano*, ¶ 20.

¶ 31    With these principles in mind, we conclude that Walmart's statement in the trespass notice was not prepared in anticipation of litigation. We reach this conclusion for a few reasons.

¶ 32    First, Walmart's statement warned Tran that he was not allowed on Walmart property and that if he entered Walmart property again, he could face criminal prosecution. This language suggests that the statement's purpose was to *deter* criminal litigation, not to prepare for it.

¶ 33    Second, at the time Walmart issued the trespass notice to Tran, there was nothing to litigate. If Tran had complied with the notice, there would have been no criminal litigation. *See Flores-Lozano*, ¶ 19.

¶ 34    Third, the reliability concerns associated with documents prepared in anticipation of litigation — an incentive to deceive and a lack of routine practice in making the document — are not present here. Walmart was simply informing Tran that he could no longer

enter its property. Walmart had no incentive to misrepresent this fact to avoid liability. And the undisputed record shows that Walmart routinely issued trespass notices to shoplifters across the country.

¶ 35   Accordingly, we conclude that the trial court did not abuse its discretion in admitting this statement under CRE 803(6).

### 2.   Tran's Statement

¶ 36   The second "statement" in the trespass notice was Tran's signature.

¶ 37   Tran printed and signed his name under a block of text that read, "I have read and understand this Notice or, in the alternative, have had it read to me and understand and acknowledge that as of 28 day of June, 2014, I am prohibited from entering Walmart Stores Inc., property. . . ."

¶ 38   We acknowledge that a signature, by itself, may not always be a "statement" within the meaning of CRE 801(a). But, any "written assertion" is a statement under the Rules of Evidence. *See id.* And by printing and signing his name under a block of text that said, "I have read and understand this Notice," Tran was asserting that he had read and understood the trespass notice.

¶ 39  We conclude that this statement was not hearsay because it was the statement of a party opponent. We reach this conclusion for the following reasons.

¶ 40  First, under CRE 801(d)(2)(A), a statement is not hearsay if "[t]he statement is offered against a party" and is "the party's own statement in either an individual or a representative capacity." Tran's statement falls under this rule. He made the statement. And the prosecution offered the statement against him to prove that he knowingly and unlawfully entered Walmart. *See* § 18-4-203(1).

¶ 41  Second, we disagree with Tran's contention that there is no evidence that he was the person who signed the document. At trial, a Walmart employee testified that he issued a new trespass notice to Tran on the date of the charged offenses. The employee testified that Tran's signature on the trespass notice from the date of the charged offenses "appeared to be similar" to Tran's signature on the June 28, 2014, trespass notice.

¶ 42  This employee also testified that he used Tran's date of birth and photograph from Walmart's records to confirm that Tran was the same person to whom Walmart had issued the June 28, 2014, trespass notice.

12

¶ 43    Finally, we are not persuaded by Tran's contention that we should not affirm his convictions on a ground that the prosecution did not rely on at trial.  We may affirm the trial court's evidentiary ruling on any ground supported by the record.  *Phillips*, ¶ 63.

### B.    Confrontation Clause

¶ 44    Tran next contends that the trial court violated his federal constitutional right to confront the witnesses against him by admitting the trespass notice.  We conclude that (1) Tran's own statement did not implicate the Confrontation Clause and (2) the trial court did not commit plain error by admitting Walmart's statement.

¶ 45    The Sixth Amendment of the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

¶ 46    The Supreme Court has construed the Sixth Amendment's Confrontation Clause to bar the admission of testimonial hearsay against a criminal defendant unless the declarant is unavailable to testify at trial and the defendant has had a prior opportunity to

13

cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

¶ 47 A hearsay statement is testimonial if it was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz*, 557 U.S. at 310 (quoting *Crawford*, 541 U.S. at 51-52); *Phillips*, ¶ 78.

¶ 48 Whether a hearsay statement falls under an exception to the rule against hearsay is immaterial to whether that statement violates the Confrontation Clause. *See People v. Fry*, 92 P.3d 970, 978-79 (Colo. 2004) ("Although admissibility under a hearsay exception may have lent support to a finding of reliability under the *Roberts* test, in light of *Crawford*, such a determination is no longer relevant."); *Stevens v. People*, 29 P.3d 305, 311 (Colo. 2001), *overruled on other grounds by Fry*, 92 P.3d 970 ("Although an out-of-court statement may be admissible because it falls within an exception to the hearsay rule, the statement must nevertheless be excluded at a criminal trial if admitting it into evidence would deprive the defendant of his constitutional right to be confronted with the witnesses against him.").

¶ 49    We review de novo whether the trial court violated Tran's confrontation rights by admitting the trespass notice into evidence. *Phillips*, ¶ 85.  Because Tran did not raise a Confrontation Clause objection at trial, we apply the plain error standard of reversal. *Hagos v. People*, 2012 CO 63, ¶ 14.  Under this standard, we will reverse only if the trial court committed an "obvious and substantial" error that "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction."  *Id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

### 1.    Tran's Statement

¶ 50    We first conclude that the Confrontation Clause did not apply to Tran's statement in the trespass notice.

¶ 51    As noted, the Confrontation Clause guarantees that a defendant shall have the right to confront the "witnesses against him," but it does not guarantee him the right to confront himself. U.S. Const. amend. VI; *see also United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012) ("[A] defendant cannot complain that he was denied the opportunity to confront himself."); *United States v. Brown*, 441 F.3d 1330, 1358-59 (11th Cir. 2006) (same).

15

¶ 52     Thus, the admission of Tran's own statement did not violate, or even implicate, his rights under the Federal Confrontation Clause.

### 2.     Walmart's Statement

¶ 53     We next conclude that the trial court did not commit plain error in admitting Walmart's statement in the trespass notice. We reach this conclusion, without deciding whether Walmart's statement was testimonial, because the evidence was cumulative.

¶ 54     Tran points out that the crucial issue at trial was whether he knew that he could not lawfully enter Walmart property. *See* § 18-4-203(1). But Tran's statement in the trespass notice independently established that he knew he was not allowed to enter Walmart property. Thus, because Walmart's statement was cumulative of Tran's statement on this point, the court did not plainly err by admitting Walmart's statement. *See People v. Joyce*, 68 P.3d 521, 524 (Colo. App. 2002) (concluding that admitting hearsay statements was not plain error because the statements were cumulative of other evidence); *see also People v. Douglas*, 2015 COA 155, ¶ 41 (concluding that the trial court did not commit plain

error in admitting lay testimony that was cumulative of properly admitted expert testimony).

¶ 55 Accordingly, we cannot say that any error in admitting Walmart's statement was "obvious and substantial," or so "undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Hagos*, ¶ 14 (quoting *Miller*, 113 P.3d at 750).

### III. Prosecutor's Rebuttal Closing Argument

¶ 56 Tran next contends that the prosecutor committed reversible misconduct at three points during his rebuttal closing argument. We disagree.

### A. Prosecutorial Misconduct

¶ 57 Prosecutors may not offer rebuttal closing arguments that "inflame the passions and prejudices of the jury, denigrate defense counsel, misstate the evidence, or assert a personal opinion as to the credibility of witnesses." *People v. Nardine*, 2016 COA 85, ¶ 35. Instead, a prosecutor's argument must focus on the "evidence and reasonable inferences to be drawn" from the evidence. *Id.* (citing *People v. Ferrell*, 200 Colo. 128, 131, 613 P.2d 324, 326 (1980)).

¶ 58      Still, prosecutors have "wide latitude in the language and presentation style used" during closing argument. *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005). This is especially true when a prosecutor is responding to defense counsel's closing argument. *People v. Lovato*, 2014 COA 113, ¶ 64.

¶ 59      Because Tran did not object to the prosecutor's rebuttal closing argument, we review for plain error and will reverse only if the prosecutor committed misconduct that was "flagrantly, glaringly, or tremendously improper." *Wend v. People*, 235 P.3d 1089, 1097 (quoting *Domingo-Gomez*, 125 P.3d at 1053).

## B.     Analysis

¶ 60      We first place the prosecutor's challenged remarks in their context. We will highlight the specific comments with which Tran takes issue.

¶ 61      Defense counsel's closing argument challenged the evidence supporting the "knowing" element of second degree burglary. *See* § 18-4-203(1). She pointed out that Tran had received the trespass notice eight months before the date of the charged offenses. She also pointed out that Tran received the trespass notice at a different Walmart store.

¶ 62    The prosecutor's challenged comments during rebuttal closing

argument responded to these points.

¶ 63    First, the prosecutor reminded the jury that the prosecution

had the burden to prove Tran's guilt beyond a reasonable doubt.

He explained that "[t]he defense does not have to do a single thing

in this case.  They could sit over there, and if I haven't proven this

case beyond a reasonable doubt, you have to find [Tran] not guilty."

¶ 64    Then, he began to challenge the defense theory of the case:

> But, when they do have some sort of a theory,
> you get to ask yourself, ["]What supports that
> theory[?]  What evidence do you have that
> really supports it?  What are the things that
> you can use?["]  You can use testimony.  You
> can use photos, physical or tangible evidence.
> If we brought some of those items in, you can't
> use vague or speculative hunches or guesses.
> That whole notion of there could be an
> identical twin out there, that's a speculation.
> That's a guess.
>
> *Think about how bad our legal system would be*
> *when people were using those kind of things.*
> You can't use mere possibilities.  They are
> unsupported by the actual evidence that you
> have, if they don't rise to the level of
> reasonable doubt.  There is all possibilities out
> there [sic].  But it has to rise to the level of
> reasonable doubt.

(Emphasis added.)

19

¶ 65    Later, he challenged the defense theory on different grounds:

> Their theory is that he had no idea what was really going on.  He realized he wasn't allowed to be coming back to Walmart.  By the way, who would ever make that confusion of, oh, yeah, you guys are fine if I go shoplift at the other store, right?  That's no big deal.  I can go do that.  You don't want me to shop at this one store over here.
>
> That doesn't make any sense.  Why is [it] that they are arguing all of this if their theory doesn't fit with the evidence.  There is a simple saying, ["]You admit what you can't deny, and you deny what you can't admit.["]  What it basically means, it's the notion of, look, we have to — we can't deny all of this stuff.  So, we will go ahead and admit some of it.  It's kind of like minimization, damage control . . . .
>
> That's exactly what the defense strategy is in this case.  *Folks, don't let them get away with this.  This seriously undermines the criminal justice system.*  This seriously minimized what happened in this case.  Walmart deserves protections of law.  Just because they come in with the theory of, ["]Admit what you can't deny, and deny what you can't admit,["] doesn't mean they should get away with it . . . .
>
> The law is very clear on this.  You commit the crime, you have to be convicted of it . . . .  Every bit of evidence points to the fact that the defendant is guilty of the second degree burglary and possession of burglary tools.  *Folks, you need to find him guilty.  You need to hold him accountable for this.*

(Emphasis added.)

20

¶ 66    Tran contends that the prosecutor committed reversible misconduct by telling the jurors that Tran should be held "accountable" because his defense "seriously undermines the criminal justice system" and by warning the jurors "how bad our legal system would be" were Tran's defense to prevail.  He also asserts that the prosecutor improperly denigrated defense counsel and Tran by using the terms "they" and "them."

¶ 67    We conclude that the prosecutor's remarks, taken in context, were not so improper as to constitute plain error.  We reach this conclusion for the following reasons.

¶ 68    First, the prosecutor's argument that the jury "need[ed] to hold [Tran] accountable" was not improper because the prosecutor made this comment immediately after arguing that the evidence established Tran's guilt and that if "[y]ou commit the crime, you have to be convicted of it."

¶ 69    Second, the prosecutor argued that Tran's theory of defense relied on "mere possibilities" and "speculation."  But the prosecutor emphasized that the prosecution had the burden to prove Tran's guilt beyond a reasonable doubt.  Then, he encouraged the jury to focus on the evidence, not on "mere possibilities" or "speculation."

This statement was proper because it tracks how the Colorado model jury instructions define "reasonable doubt." *See* COLJI-Crim. E:03 (2019) ("[Reasonable doubt] is not a vague, speculative, or imaginary doubt . . . .").

¶ 70    Third, on one reading, the prosecutor's statement that the defense theory of the case "seriously undermines the criminal justice system" could sound like an attempt to inflame the jury. But these comments could also mean that a jury's reliance on speculation, instead of the evidence presented at trial, would undermine the criminal justice system. We thus conclude that this comment was not so improper as to constitute plain error. *Wend*, 235 P.3d at 1097.

¶ 71    Fourth, we disagree with Tran's contention that the prosecutor denigrated defense counsel by referring to Tran and defense counsel as "they" and "them." "They," in and of itself, is not a denigrating term.

¶ 72    Accordingly, we perceive no reversible misconduct. *Domingo-Gomez*, 125 P.3d at 1048; *Lovato*, ¶ 64.

IV. Proportionality Review

¶ 73    Next, Tran contends that the trial court erred by denying his request for an extended proportionality review of his twenty-four-year sentence.

¶ 74    We remand for the trial court to conduct a new abbreviated proportionality review considering the supreme court's recent decision in *Wells-Yates*.

A. The Law On Sentence Proportionality

¶ 75    The Eighth Amendment guarantees that "no cruel and unusual punishments" shall be "inflicted." U.S. Const. amend. VIII; *see also* Colo. Const. art. II, § 20.

¶ 76    The Supreme Court has concluded that the Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)); *see also Ewing v. California*, 538 U.S. 11 (2003).

¶ 77    To determine whether a sentence is so grossly disproportionate that it violates the Eighth Amendment, the

Colorado supreme court's *Wells-Yates* opinion recently articulated the following analysis.

¶ 78     First, the court conducts an "abbreviated proportionality review." *Wells-Yates*, ¶¶ 10-11. This review has two steps. *Id.*

¶ 79     In step one, the court must assess the gravity or seriousness of each offense for which the defendant was convicted. *Id.* at ¶ 12. Colorado has recognized certain offenses as "per se" grave and serious — that is, offenses that are *always* grave and serious regardless of the underlying facts of the conviction. *See id.* at ¶ 13; *People v. Deroulet*, 48 P.3d 520, 524 (Colo. 2002), *abrogated on other grounds by Wells-Yates*, 2019 CO 90M.

¶ 80     In step two, the court must compare the gravity of the defendant's offenses with the harshness of the sentence imposed for those offenses. *Wells-Yates*, ¶ 14. When weighing the harshness of the defendant's sentence, the court must factor in the defendant's parole eligibility. *Id.*

¶ 81     An abbreviated proportionality review of a sentence imposed under the habitual criminal statute has slightly different contours because the sentence is based on a triggering offense — the offense for which the defendant was convicted in the current case — and

multiple predicate offenses — the defendant's previous felony

convictions. *See id.* at ¶¶ 20-28. The supreme court has explained

that, in this scenario,

> [i]f there are multiple triggering offenses, the
> reviewing court must look at the sentence
> imposed for each such offense and engage in a
> proportionality review of that sentence because
> each sentence represents a separate
> punishment for a distinct and separate crime.
> As to each sentence, the inquiry is whether the
> corresponding triggering offense and the
> predicate offenses, considered together, are so
> lacking in gravity or seriousness as to suggest
> that the sentence is grossly disproportionate.

*Id.* at ¶ 24 (citation omitted).

¶ 82    A court only reaches the second part of a proportionality

review — known as an "extended proportionality review" — if the

abbreviated proportionality review raises an inference that the

defendant's sentence was "grossly disproportionate" to the gravity of

his offense. *Id.* In this phase of the analysis, the court must

compare the sentence at issue with "(1) sentences for other crimes

in the same jurisdiction and (2) sentences for the same crime in

other jurisdictions." *Id.* at ¶ 17.

## B.  Tran's Proportionality Review

¶ 83    After the trial court entered Tran's convictions for second degree burglary and possession of burglary tools, it held a habitual criminal hearing.

¶ 84    The trial court found that the prosecution proved, beyond a reasonable doubt, that Tran had convictions for the following offenses:

- two convictions for possession of a controlled substance, a class 4 felony;

- forgery, a class 5 felony;

- two convictions for attempt to obtain a controlled substance by fraud or deceit, a class 6 felony; and

- second degree burglary, a class 4 felony.

¶ 85    Because Tran had six prior felony convictions, the trial court sentenced him under the habitual criminal statute.  *See* § 18-1.3-801(2)(a)(I)(A).

¶ 86    The habitual criminal statute required the court to sentence Tran to twenty-four years in the custody of DOC for his second degree burglary conviction and twelve years for his possession of

26

burglary tools conviction. *See id.*; *see also* § 18-1.3-401(1)(a)(V)(A). The trial court imposed these sentences concurrently.

¶ 87 Tran requested a proportionality review of his sentence.

¶ 88 During its abbreviated proportionality review, the trial court found that the fact of Tran's "six prior felony offenses, even ignoring the issue of grave and serious, tends to lend itself to somebody [for whom] any habitual offender sentence would be considered constitutionally proportionate."

¶ 89 Then, relying on *Deroulet*, 48 P.3d at 524, the trial court found that Tran's two second degree burglary convictions were per se grave and serious.

¶ 90 Relying again on *Deroulet*, the trial court found that Tran's two convictions for possession of a controlled substance were per se grave and serious.

¶ 91 Because the trial court found that four of Tran's convictions were "grave and serious," it denied Tran's request for an extended proportionality review.

### C. *Wells-Yates*

¶ 92 In late 2019, three years after Tran was sentenced, our supreme court decided *Wells-Yates*, which made significant changes

27

to the law on sentence proportionality in Colorado. *See Wells-Yates,* ¶¶ 1-5.

¶ 93     The supreme court held that

> (1) during an abbreviated proportionality review of a habitual criminal sentence, the court must consider each triggering offense and the predicate offenses together and determine whether, in combination, they are so lacking in gravity or seriousness as to raise an inference that the sentence imposed on that triggering offense is grossly disproportionate; (2) in determining the gravity or seriousness of the triggering offense and the predicate offenses, the court should consider any relevant legislative amendments enacted after the dates of those offenses, even if the amendments do not apply retroactively; (3) not all narcotic offenses are per se grave or serious; and (4) the narcotic offenses of possession and possession with intent are not per se grave or serious.

*Id.* at ¶ 2 (footnote omitted).

¶ 94     *Wells-Yates* left a few questions unanswered. As relevant here, the supreme court declined to decide whether second degree burglary is still a per se grave and serious offense. *See id.* at ¶ 65 n.17.

### D.    Analysis

¶ 95   The trial court conducted its abbreviated proportionality review of Tran's sentence long before the supreme court decided *Wells-Yates*. So, the trial court relied on several points of law that are no longer valid.

¶ 96   First, the trial court concluded that Tran's two felony convictions for possession of a controlled substance were per se grave and serious. This was true at the time of Tran's abbreviated proportionality review. *See, e.g., Deroulet*, 48 P.3d at 524. But after *Wells-Yates*, convictions for possession of a controlled substance are no longer per se grave and serious. *Wells-Yates*, ¶ 2.

¶ 97   Second, it is not clear from the record whether the trial court considered subsequent legislative amendments as evidence of whether the offenses were per se grave and serious. *Wells-Yates* clarified that "in determining the gravity or seriousness of the triggering offense and the predicate offenses, the court should consider any relevant legislative amendments enacted after the dates of those offenses, even if the amendments do not apply retroactively." *Id.*

¶ 98   Third, the record suggests that the trial court found Tran's two convictions for second degree burglary were per se grave and

29

serious. The supreme court, in earlier cases, held that burglary is a per se grave and serious offense. *See Deroulet*, 48 P.3d at 524; *Gaskins*, 825 P.2d at 37, *abrogated by Wells-Yates*, 2019 CO 90M, ("The crimes of aggravated robbery, robbery, burglary, and accessory to first-degree murder involve violence or potential for violence by their very nature.") But in *Wells-Yates*, the supreme court signaled that it was retreating from this, in part:

> Because the question is not before us, we do not address whether the designation of burglary as a per se grave or serious crime extends to third degree burglary, which includes breaking into a coin vending machine, *see* [section 18-4-204(1), C.R.S. 2019], or even second degree burglary, which includes unlawfully remaining in a building or occupied structure after a lawful entry with the intent to commit therein a crime against property, *see* [section 18-4-203(1), C.R.S. 2019].

*Wells-Yates*, ¶ 65 n.17.

¶ 99 Thus, after *Wells-Yates*, it is unclear whether and to what extent second degree burglary remains a per se grave and serious offense. The facts of *Wells-Yates* do not help us answer this question. One of the defendant's triggering convictions in *Wells-Yates* was for second degree burglary of a dwelling. *See id.* at ¶¶

29-31. The supreme court remanded for a "factual analysis" of the sentence imposed on this triggering offense — along with the defendant's six other triggering offenses — but declined to say whether the second degree burglary conviction was per se grave and serious. *Id.* at ¶ 75 n.19.

¶ 100 Still, *Wells-Yates* gave a few guideposts for courts considering whether to designate an offense as per se grave and serious. First, the supreme court warned that "designating a crime per se grave or serious has significant consequences and courts should therefore do so cautiously." *Id.* at ¶ 62. Second, it suggested that "[t]his concern is magnified in the habitual criminal context, where every sentence under review has been imposed without the trial court's exercise of discretion." *Id.* Third, the court cautioned that "a crime should not be designated per se grave or serious unless the court concludes that the crime would be grave or serious in every potential factual scenario. Using the designation otherwise is fraught with peril." *Id.* at ¶ 63.

¶ 101 Following these guideposts, we conclude that on remand, the trial court should not treat Tran's second degree burglary convictions as per se grave and serious. Instead, the trial court

should analyze the facts of each offense to determine whether it is grave and serious. *See id.* We do not hold that second degree burglary is never a per se grave or serious offense — *Well-Yates* does not go so far. *See id.* at ¶ 65 n.17. We hold only that the trial court, in this case, should not treat Tran's second degree burglary convictions as per se grave and serious. *See id.* at ¶ 63.

¶ 102 Fourth, after concluding that Tran had four per se grave and serious offenses, it appears that the trial court did not analyze the harshness of Tran's sentence. *Wells-Yates* clarified that a court must analyze the harshness of the defendant's sentence, including parole eligibility, "even when the triggering offenses and/or the predicate offenses supporting a habitual criminal sentence include grave or serious crimes . . . ." *Id.* at ¶ 27.

¶ 103 Thus, we remand for the trial court to conduct a new abbreviated proportionality review under *Wells-Yates*. When conducting this review, the trial court should keep the following principles from *Wells-Yates* in mind:

- The court must consider each triggering offense together with Tran's six predicate offenses "to determine whether, in combination, they are so lacking in gravity or

seriousness as to raise an inference that the sentence"
for each triggering offense is grossly disproportionate, *id.*
at ¶ 2.

- Tran's two convictions for possession of a controlled
  substance are not per se grave and serious, *id.*

- The court should consider any relevant legislative
  amendments, even if they do not apply retroactively, as
  "the best evidence" of the gravity and seriousness of each
  of Tran's convictions, *id.* at ¶¶ 49, 58.

- Whether and to what extent second degree burglary is
  per se grave and serious is now an open question, *see id.*
  at ¶ 65 n.17.

- The supreme court has cautioned that courts should use
  the per se grave and serious designation sparingly, *see*
  *id.* at ¶¶ 54-67.

- In assessing the harshness of Tran's sentence, the trial
  court must consider Tran's parole eligibility, *id.* at ¶ 14.

- Even if the trial court concludes that some, or all, of
  Tran's convictions are grave and serious, it still must

weigh the seriousness of those convictions against the harshness of Tran's sentence, *id.* at ¶ 27.

¶ 104    Should the trial court find that either of Tran's sentences raises an inference of gross disproportionality, we point out that *Wells-Yates* also clarified the procedure for conducting an extended proportionality review.  *Wells-Yates* explained that "courts conducting an extended proportionality review should compare the sentence at issue to (1) sentences for other crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions."  *Id.* at ¶ 17.

¶ 105    But wait, says Tran.  Why don't we just cut out the middleman and conduct an abbreviated proportionality review on appeal?

¶ 106    In *Wells-Yates* and its two companion cases, the supreme court concluded that trial courts are "uniquely suited" to conduct the kind of factual analysis required under *Wells-Yates*.  *See id.* at ¶ 75 (quoting *People v. Gaskins,* 825 P.2d 30, 35 (Colo. 1992)). Thus, in all three cases, the supreme court remanded for the trial court to conduct a new abbreviated proportionality review following the principles it set out in *Wells-Yates*.  *Id.*; *see also People v.*

*McRae*, 2019 CO 91, ¶ 19 (same); *Melton v. People*, 2019 CO 89, ¶ 28 (same). We do the same.

## V.    Conclusion

¶ 107    The judgment of conviction is affirmed, the trial court's order denying Tran's request for an extended proportionality review is reversed, and the case is remanded for the trial court to conduct a new abbreviated proportionality review in accordance with *Wells-Yates*.

JUDGE WELLING and JUDGE PAWAR concur.