22CA0202 Peo v Harrison 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0202
Jefferson County District Court No. 20CR3510
Honorable Diego G. Hunt, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Eugene Harrison,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Philip J. Weiser, Attorney General, Lane Towery, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Robert Eugene Harrison, appeals the judgment of conviction entered on jury verdicts finding him guilty of various offenses arising out of a carjacking.  We affirm.

## I.    Background

¶ 2    As two elderly sisters were pulling out of the driveway to go to lunch, a perpetrator approached their car, forcibly removed each of them from it, and struck them with the car as he drove away. Neighbors called 911, and the sisters were taken to the hospital. One suffered rib fractures, a partially collapsed lung, and bruising to that lung.  The other suffered a dislocated hip and what a treating physician called a "significant laceration or wound" on her leg.  Once the sisters were released from the hospital, they were admitted to a nursing home.

¶ 3    On each of the two days after the carjacking, there was a police chase involving the stolen vehicle.  On the first day after the carjacking, officers pursued the vehicle but could not effect a stop. On the second day, officers engaged in a longer and more dangerous high-speed chase of the vehicle, stopped it, and arrested Harrison, the driver.

¶ 4 Harrison was charged with two counts of attempted first degree extreme indifference murder, two counts of first degree extreme indifference assault — at-risk person, two counts of vehicular eluding, and various other counts. The jury found him guilty of the attempted murder, assault, and vehicular eluding counts, as well as most of the others. He was convicted and sentenced accordingly.

¶ 5 Harrison appeals, arguing that the prosecutor committed numerous instances of misconduct during opening statement and closing argument and that the evidence was insufficient to support one of the vehicular eluding counts. We conclude that none of these arguments warrant relief.

## II. Prosecutorial Misconduct

¶ 6 We evaluate allegations of prosecutorial misconduct using a two-step analysis. First, we determine whether the conduct was improper based on the totality of the circumstances. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). Second, if the conduct was improper, we determine whether the impropriety requires reversal under the applicable standard. *Id.*

¶ 7    When evaluating impropriety under the first step, we are mindful that arguments delivered during trial are not always perfectly scripted. *People v. Samson*, 2012 COA 167, ¶ 30. Therefore, prosecutors have wide latitude in the language they use, and we "accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." *Id.*

¶ 8    Harrison alleges that there was pervasive misconduct in both opening statement and closing argument that warrants reversal. We conclude that none of the allegations warrant relief whether considered individually or in the aggregate.

### A.    "Profound Selfishness"

¶ 9    Harrison argues that during the opening statement the prosecutor's repeated description of his conduct as exhibiting "profound selfishness" was improper. He points out that selfishness was not an element of any charged offense, and these comments served only to attack his character and provoke an emotional response from the jury. However, viewed in the context of the entire opening statement, the prosecutor's references to Harrison's selfishness were clearly connected to the elements of the attempted murder and assault counts.

¶ 10     The prosecutor posited that the extreme indifference required for those counts is "generally understood to mean a total lack of concern or caring.  And that selfishness, that profound selfishness, you're going to see that . . . lack of caring, in the moments that he walks down that street, in the moments he selects [the sisters] and pulls them from that car."  Thus, the prosecutor's repeated references to Harrison's profound selfishness were not a character attack that played on the jury's emotions.  Instead, the prosecutor described Harrison as selfish in order to communicate that he acted without concern or caring for others — in other words, with extreme indifference.

¶ 11     Recognizing this, Harrison argues that the prosecutor's statements were nevertheless improper because prosecutors are not allowed to argue in an opening statement "that particular legal standards were met."  As we understand it, Harrison argues that it is improper for a prosecutor to explain during opening statement how they will prove the elements of the charged offenses.  But Harrison offers no authority for this proposition, and we are aware of none.  We therefore reject this argument.  *See People v. Stone,*

2021 COA 104, ¶¶ 51-52 (declining to address argument presented without supporting legal authority).

### B. Characterizing the Sisters as "Easy Targets"

¶ 12 Harrison contends that the prosecution improperly engendered sympathy for the victims by repeatedly characterizing the sisters as "easy targets." We disagree.

¶ 13 A prosecutor may comment on reasonable inferences stemming directly from the facts in evidence. *People v. Jamison*, 2018 COA 121, ¶ 31. The evidence was clear that both sisters were elderly. Moreover, their advanced age was directly related to the offenses charged in this case, which included theft committed against an at-risk victim. We therefore conclude that it was not improper for the prosecutor to characterize the sisters as easy targets.

### C. Holding Harrison "Accountable"

¶ 14 Harrison next argues that it was misconduct for the prosecutor to implore the jury during opening statement and closing argument to hold him "accountable." Harrison cites *People v. Buckner*, 2022 COA 14, for the proposition that a prosecutor's

plea to hold a defendant accountable is improper. But that is not what *Buckner* holds.

¶ 15  The statement at issue in *Buckner* was as follows: "[The victim's] day of justice is a long time coming. That's today. Hold [the defendant] accountable for what he did to that girl that night." *Buckner*, ¶ 41. The division held that this was improper because it pressured "jurors to 'do justice' for a victim." *Id.* at ¶ 42.

¶ 16  The prosecutor here did not argue that Harrison should be held accountable to do justice for the sisters. Instead, all the references to holding Harrison accountable were preceded by summaries of the evidence that, according to the prosecutor, proved Harrison committed the charged offenses. Thus, considered in context, the prosecutor's pleas to hold Harrison accountable were exhortations to find him guilty because the evidence required it. As such, the prosecutor's references to accountability were not improper. *See People v. Tran*, 2020 COA 99, ¶ 68 (Prosecutor's plea to hold the defendant accountable was not improper "because the prosecutor made this comment immediately after arguing that the evidence established [the defendant's] guilt.").

## D. Victim Impact Argument

¶ 17    Harrison argues that the prosecutor made various improper statements about how the injuries the sisters suffered impacted their lives. Most notably, the prosecution began its closing argument as follows.

> That date right there. That is the day that [the sisters] lost their independence. That is the day that it was taken from them by him. That is the day, the last day, that they were able to make plans on their own, wake up in their own homes, and enjoy their retirement the way they wanted to. That was taken because of his selfishness.

The prosecutor repeated in closing that Harrison "stole [the sisters'] independence." And in the opening statement, the prosecutor said that on the day of the carjacking, the sisters "didn't know that their lives were about to change forever."

¶ 18    It was certainly proper for the prosecutor to argue that the sisters' injuries were sufficiently severe to qualify as serious bodily injury. And serious bodily injury was defined in the jury instructions as including "a substantial risk to protracted loss or impairment of the function of any part or organ of the body."

Therefore, the prosecutor was free to argue that the sisters' injuries risked loss or impairment of body function.

¶ 19   But the prosecutor's comments above seemed to go beyond that. Rather than argue that the sisters' injuries impaired the functionality of their bodies, the prosecutor argued that the injuries fundamentally and irreversibly impacted their quality of life. These comments about impact to quality of life — beyond mere body functionality — were improper. They were not related to the elements of the charged offenses and served only to engender sympathy for the victims. And encouraging a jury to convict based on sympathy for the victims is improper. *See Buckner*, ¶ 42.

¶ 20   Having found that these statements were improper, we must next decide whether they warrant relief under the applicable standard. Harrison failed to object to these statements, so our review is for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14. Plain error must be both obvious and substantial. *Id.* To qualify as obvious, the "error [must] be 'so clear-cut, so obvious,' a trial judge should be able to avoid it without benefit of objection." *People v. Crabtree*, 2024 CO 40M, ¶ 42 (quoting *Romero v. People*, 2017 CO

37, ¶ 6). We conclude that the challenged statements were not so obvious.

¶ 21    The line between proper statements about an injury's effect on body functionality and improper statements about an injury's effect on quality of life can be a fine one. Although we conclude that the prosecutor's statements crossed this line, it is arguable that they did so only minimally. And it is not totally implausible that the jury and the court heard the prosecutor's statements and understood them as a serious bodily injury argument. In other words, they could have understood the statements as an argument that the sisters' loss of independence and autonomy during retirement established that there was a substantial risk of protracted loss or impairment of their bodies, as was required for serious bodily injury. Based on this possibility, we must conclude that although the statements were improper, that impropriety was not so obvious that the trial court should have sua sponte interrupted the prosecutor's closing to correct the error.

E.    Victim's Use of Mobility Aid at Trial

¶ 22    Relying on *Harris v. People*, 888 P.2d 259 (Colo. 1995), Harrison next argues that it was improper for the prosecutor to

point out during closing argument that one sister's use of a wheelchair at the time of trial supported a finding of serious bodily injury. Harrison recognizes that the sister testified at trial that she was then reliant on mobility aids and had not been reliant on them before the carjacking. But Harrison contends that there was no evidence that needing the mobility aids was *the result* of the carjacking. We conclude that the prosecutor's statement was a proper comment on facts in evidence and the inferences that could be properly drawn from them. *See Jamison*, ¶ 31.

## F.    Machiavelli

¶ 23    Harrison argues that the prosecutor improperly invoked Machiavelli, a person Harrison describes as "an infamous figure, who would certainly provoke a negative reaction from the jury." We disagree.

¶ 24    After arguing that the evidence showed that Harrison committed the carjacking without any concern for injuring the sisters, the prosecutor said,

> There's a quote by Machiavelli which says the ends justify the means. In that context, it was used for leaders, for tyrants who would commit atrocities for the greater good, and it's really an excuse for them, because when they're

> committing these atrocities, when they're doing those things to achieve that goal, they know what they're doing. They're aware of their conduct.
>
> Defense, at the end of this case, told you that, well, he had a goal, it was just to get that car, that he didn't go out to try to kill anyone, that he didn't try to hurt anyone, he just wanted a car.

¶ 25    This was an inartful invocation of the cliche that the end justifies the means. However, the prosecutor did not expressly compare Harrison to Machiavelli or argue that he was a Machiavellian figure. *Cf. Harris*, 888 P.2d at 265 (finding prosecutorial misconduct where prosecutor characterized defendant "as a thug and a bully who, like Saddam Hussein, needed punishment"). Instead, the prosecutor simply argued that Harrison wanted a car and chose to place the acquisition of a car (the ends) above the means (injuring the sisters). The reference to Machiavelli, though inartful and somewhat confusing, was a peripheral distraction that did not constitute misconduct.

### G.    Value of the Victims' Lives

¶ 26    Harrison next argues that the prosecutor's references to the value of human life and the victims' lives specifically was improper

because it asked the jury to do justice for sympathetic victims. We conclude that these comments were acceptable references to the mens rea element of the extreme indifference counts.

¶ 27    As the jury instructions in this case stated, attempted first degree extreme indifference murder required proof that Harrison acted "under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally." Similarly, first degree extreme indifference assault required proof that he acted "under circumstances manifesting extreme indifference to the value of human life."

¶ 28    During closing argument, the prosecutor said, "We have to acknowledge [the sisters], the value of their lives, and what was taken from them, because that's part of the charge of extreme indifference murder. It's part of the charge of assault in the first degree, extreme indifference." Shortly thereafter, the prosecutor said that extreme indifference murder "recognizes the value of human life and it puts it against the conduct of the person who attempted to take that life."

¶ 29    These statements did not improperly invite the jury to do justice for sympathetic victims. Instead, they argued to the jury

that Harrison's conduct satisfied the extreme indifference elements of the attempted murder and assault counts. *See Samson*, ¶ 30 (prosecutor's arguments need not be perfectly and precisely phrased to fall within the wide range of acceptable closing argument).[1]

## H.  Denigration of Defense Expert

¶ 30  Harrison argues that the prosecutor improperly denigrated a defense expert witness during rebuttal closing argument.

¶ 31  A prosecutor cannot personally denigrate an opposing expert witness by arguing that they made things up in their testimony. *See People v. McBride*, 228 P.3d 216, 223 (Colo. App. 2009). But a prosecutor can point out an opposing expert's bias or challenge their conclusions. *Id.*

¶ 32  The witness at issue here, Debra Johnson, was qualified as an expert in forensic pathology. Her testimony called into question

---

[1] Harrison argues that the impropriety of these statements was amplified because he is not white and encouraging the jurors to consider the value of the white sisters' lives tapped into the implicit bias of the jury. We have no way to evaluate whether this amplification occurred or not. Moreover, we conclude that these statements did not improperly invite the jury to act out of sympathy for the victims in the first place.

whether the sisters' injuries were caused by Harrison intentionally running them over with the car, as the prosecution argued.

¶ 33     In rebuttal closing argument, the prosecutor said this about the expert,

> I'm going to talk to you for a second about Debra Johnson.  Nice lady.  She's got some experience.  She reminds me of — she reminds me, maybe some of you, she remind[s] me of when you turn on the History Channel, and you watch a show about, like, aliens.  And they get somebody on who is — really presents well, is a professor at somewhere, the cinematography is great, the production is slick.
>
> And you know, you're watching along and it's amusing, and it's interesting, and then they testify — the person says, well, you know, it could be that the pyramids were built as landing sites for aliens.  It could be that Machu Picchu was built by aliens.  That's Ms. Johnson.
>
> She used could be, possible, maybe.  Her job was to come here as a hired gun for the defense and say, well, these things are all possible.  These things are all — it could have happened this way.  But it didn't.  She was merely brought to inject doubt into a situation in which there is no doubt.
>
> Again, it's like when these people get up and say, well, you know, Adolf Hitler didn't die after World War II . . . .  JFK is still alive, somebody who will be on the History Channel

14

one of these nights and say that. Sounds interesting, but when you dig down and look at everything, and when it all comes down, you go yeah, that's not what happened. If aliens were able to get — . . . . Dr. Johnson lacks credibility.

¶ 34 The prosecutor's argument may have been hyperbolic and certainly included analogies that were not very useful, as evidenced by the court's sustaining two defense objections to it. But the gist of the argument was that the expert advanced a version of the carjacking that was not very believable — just like it's not very believable that aliens built Machu Picchu. It was proper for the prosecutor to point out that the expert was paid by the defense. And at no point did the prosecutor accuse the expert of making things up. *See id.* We therefore disagree that the prosecutor's statements exceeded the wide latitude prosecutors are afforded in closing argument.

¶ 35 To the extent that Harrison argues on appeal that the trial court erred by denying his motion for a mistrial based on this or other alleged instances of prosecutorial misconduct, he presents no authority to support that argument, and we therefore do not address it. *See People v. Larsen*, 2023 COA 28, ¶ 19 n.4 (declining

to address conclusory arguments presented without supporting authority).

## I. Denigration of Defense Theory

¶ 36 Harrison's final prosecutorial misconduct argument is that in rebuttal closing, the prosecutor improperly implied that the defense theory was not presented in good faith. The prosecutor started rebuttal closing,

> Anybody else wondering what the defense is in this case? Anybody else curious as to what the defense theory as to what happened is? Seems a little unclear at this point. Did Robert Harrison steal a car? Did he do the eluding? Have you heard [defense counsel] say that Mr. Harrison did the eluding on October 13th or October 14th? No, you haven't. The defense in this case is, throw it all at the wall, see what sticks.

¶ 37 To be clear, Harrison does not argue that this statement shifted the burden of proof. Instead, he argues that it improperly denigrated the defense by implying that the defense was not presented in good faith. We disagree.

¶ 38 The prosecutor simply pointed out that the defense did not present a unified theory of Harrison's innocence. Indeed, the defense did not, likely because it had no burden to do so. But the

16

prosecutor did not, as Harrison argues, imply that the defense was acting in bad faith. We therefore reject Harrison's allegation of error.

¶ 39 In all, we have found only one type of prosecutorial impropriety that did not warrant relief on its own. Because we perceive no additional impropriety, there is no aggregated impropriety to consider, and Harrison is not entitled to relief under a theory of cumulative prosecutorial misconduct. *See People v. Villa*, 240 P.3d 343, 359 (Colo. App. 2009).

### III. Sufficiency of the Evidence

¶ 40 Finally, Harrison argues that the evidence was insufficient to establish that he was the person driving the car on the first day after the carjacking for purposes of that vehicular eluding count. We review the record de novo to determine whether the direct and circumstantial evidence, viewed in the light most favorable to the prosecution, is sufficient to support a reasonable conclusion that the defendant is guilty beyond a reasonable doubt. *See Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005); *People v. Hupke*, 2024 COA 73, ¶ 5. Applying this deferential standard, we conclude that there

was sufficient evidence that Harrison was the driver during the vehicular eluding incident on the first day after the carjacking.

¶ 41     Although nobody identified Harrison as the driver during the car chase in question, a law enforcement officer testified to seeing Harrison in the driver's seat of the car at a different time that day. And an officer who was involved in the subject car chase that same day testified that the driver was a male wearing a baseball cap, an item that Harrison was seen wearing repeatedly over the three days of the charged conduct.

¶ 42     Notably, Harrison challenges neither the sufficiency of the evidence that he carjacked the sisters and drove the car away on the first day, nor that he drove the car during the car chase on the third day.  Harrison also does not dispute that the car was spotted at other times over the course of the three days, each time with him driving.  Viewing this evidence in the light most favorable to the prosecution, as we must, we conclude it was sufficient to support the conclusion that Harrison drove the car during the car chase the day after the carjacking.

## IV.   Disposition

¶ 43     The judgment of conviction is affirmed.

JUDGE TOW and JUDGE SCHUTZ concur.