25CA0717 Peo in Interest of AH 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0717
Arapahoe County District Court No. 22JV486
Honorable Shay K. Whitaker, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Ad.H. and Ar.H., Children,

and Concerning R.B.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Ron Carl, County Attorney, Erinn Walz, Assistant County Attorney, Aurora, Colorado, for Appellee

Brittany A. Radic, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     R.B. (mother) appeals the judgment terminating her parent-child legal relationships with Ad.H. and Ar.H. (the children). We affirm.

## I. Background

¶ 2     In October 2022, the Arapahoe County Department of Human Services received a report with concerns about mother's substance use and the condition of her home. Mother agreed to provide a drug screen, which was positive for alcohol and cocaine. The Department then removed the children and filed a petition in dependency or neglect.

¶ 3     Mother agreed to a deferred adjudication under section 19-3-505(5), C.R.S. 2025, requiring her to comply with the following treatment plan components: (1) cooperate with the Department; (2) attend family time; (3) demonstrate protective parenting; (4) address her substance abuse issues; (5) maintain stable housing; and (6) secure employment or a legal source of income. After an evidentiary hearing in September 2024, the court revoked the deferred adjudication and adjudicated the children dependent or neglected. The court then formally adopted the treatment plan described above.

1

¶4 In January 2025, the Department moved to terminate mother's parental rights. The juvenile court held an evidentiary hearing in March 2025. After hearing the evidence, the court granted the Department's motion and terminated the parent-child legal relationships between mother and the children.

## II. Admission of Evidence

¶5 Mother asserts that the juvenile court erred by admitting a report of her compliance with drug testing. Because mother did not preserve her appellate arguments in the juvenile court, we decline to address them for the first time on appeal.

¶6 At the termination hearing, the Department called the client implementation manager for Cordant Health Solutions. The manager explained that Cordant provides a program called Sentry, which tracks whether a participant in the program (1) calls into the random drug screen line, (2) is selected for testing, and (3) completes a drug test. He also testified that the program compiles a report that tracks each participant's compliance.

¶7 The county attorney then asked the juvenile court's permission to show the manager a copy of mother's Sentry compliance report, along with an affidavit from Cordant's custodian

of records.  Mother's counsel objected, claiming that the exhibit was hearsay and that the county attorney had not laid the proper foundation to authenticate the document or admit it.  But the court noted that the county attorney had not yet asked to admit the document and only wanted to show the witness the exhibit to lay a foundation.

¶ 8     The county attorney then asked foundational questions before moving to admit the exhibit as "a self-authenticating document, CRE 902."  The GAL also interjected that the exhibit was admissible under CRE 803(6) as a business record.  After conducting voir dire, mother's counsel objected because the document "was produced in anticipation of litigation, which . . . disqualifies it as a business record."  The court overruled mother's objection, concluding that, although the document was compiled for the hearing, the data within the record itself was kept as a business record by Cordant.

¶ 9     First, mother asserts that the Department failed to provide written notice of its intent to offer the exhibit as a self-authenticating record.  *See* CRE 902(11).  But mother made no such objection in the juvenile court.  Rather, when the Department offered the exhibit as a self-authenticating document, mother only

objected to its trustworthiness under CRE 803(6).  In other words, although mother made an objection, she did so "on grounds different from those raised on appeal" and therefore did not preserve her appellate argument.  *People v. Ujaama*, 2012 COA 36, ¶ 37.  Consequently, we decline to address this argument for the first time on appeal.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (In dependency or neglect cases, appellate courts "review only issues presented to and ruled on by the lower court.").

¶ 10     Second, mother asserts that the juvenile court erred by admitting the exhibit under CRE 803(6) because the record was not made by a "person with knowledge."  Recall that mother objected to the exhibit because it was prepared in anticipation of litigation and therefore lacked trustworthiness.  *See People v. Tran*, 2020 COA 99, ¶ 30 ("[D]ocuments prepared in anticipation of litigation are presumptively unreliable and are not admissible under CRE 803(6).").  On appeal, she raises a completely different argument under CRE 803(6).  Thus, because mother did not properly preserve the argument that she now raises on appeal, we decline to address it.  *See M.B.*, ¶ 14; *Ujaama*, ¶ 37.

### III. Less Drastic Alternative

¶ 11    Mother contends that the juvenile court erred by finding that there was no less drastic alternative to termination and that the court should have instead (1) denied the motion and given her more time to comply with her treatment plan or (2) ordered an allocation of parental responsibilities (APR) to maternal grandmother. For the reasons stated below, we disagree.

### A. More Time to Comply

¶ 12    Mother argues that there was a less drastic alternative in the form of extending the case and giving her more time. We disagree that this proposed resolution is properly characterized as a less drastic alternative to termination. The less drastic alternative analysis turns on whether there is a permanent or long-term placement arrangement — such as an APR — that would conclude the dependency or neglect proceeding without terminating parental rights. However, rather than rejecting mother's argument outright, we opt to construe it as a challenge to whether the court erred by finding that her conduct or condition was unlikely to change within a reasonable time. *See* § 19-3-604(1)(c)(III), C.R.S. 2025.

¶ 13     Whether the juvenile court properly terminated parental rights under section 19-3-604 is a mixed question of fact and law. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. When deciding whether a parent can become fit within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003).

¶ 14     The juvenile court found that, based on mother's "lack of compliance or success at her treatment, combined with a continuing parental unfitness," it was unlikely that she could change within a reasonable time. The court noted that "additional time would [not] be helpful" for mother "at this point" because the case had "already been pending for a significant period of time" and she had not made sufficient improvements in her sobriety and stability during that time. The court also pointed to evidence that

mother's attendance at family time had declined "over the last year."

¶ 15 The record supports the juvenile court's findings. The caseworker testified that mother had partially complied with many of the objectives of her treatment plan but noted that mother's compliance had waned over the course of the case. For example, mother completed a dual diagnosis evaluation, entered a sober living facility, and complied with sobriety monitoring. But when mother moved into her own apartment, she stopped submitting to drug screens and had not produced a sample since October 2024. Likewise, mother consistently participated in family time until she missed nine straight weeks of visits between December 2024 and February 2025. The caseworker and mother's family time coach testified about the negative impacts these missed visits had on the children, including tantrums, nightmares, and developmental regressions. Ultimately, the caseworker opined that giving mother more time would not be in the children's best interests, considering that the children "have been displaying emotional distress and behaviors because of the longevity of this case and the inconsistency of visits."

¶ 16    Mother asserts that the juvenile court erred by declining to give her more time because she "put in substantial work" and "arguably complied with all of her treatment plan objectives."  We acknowledge that there is evidence supporting mother's position, but there is also ample evidence, as described above, supporting the juvenile court's decision.  *See People in Interest of V.W.*, 958 P.2d 1132, 1134-35 (Colo. App. 1998) (even "increased compliance" over the course of a case may not justify additional time).  We must reject mother's argument because it would require us to reweigh the evidence and substitute our judgment for that of the juvenile court, which we cannot do.  *See People in Interest of S.Z.S.*, 2022 COA 133, ¶ 29.

### B.    APR to Maternal Grandmother

¶ 17    Mother submits that that the Department failed to adequately evaluate maternal grandmother for placement and therefore the juvenile court erred by rejecting an APR to maternal grandmother as a less drastic alternative to termination.  We disagree.

¶ 18    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 1108, 1122

8

(Colo. 1986).  In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3).  To aid the court in determining whether there is a less drastic alternative to termination, the department must evaluate a reasonable number of persons the parent identifies as placement options.  *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004).

¶ 19    A viable less drastic alternative must do more than adequately meet a child's needs; rather, it must be in the child's best interests.  *A.M.*, ¶ 27.  Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination.  *Id.* at ¶ 32.  Under those circumstances, we must affirm the court's decision if its findings are supported by the record.  *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

¶ 20    The juvenile court determined that there was no less drastic alternative to termination and that termination and adoption was in the children's best interests.  In doing so, the court noted that (1) maternal grandparents were unwilling to accept placement because they were already a placement for mother's older child and (2) it had

not heard any evidence that maternal grandparents had changed their position.

¶ 21    The record supports the juvenile court's findings.  The caseworker testified that the Department had contacted the individuals provided by mother, but there was no one who could be a placement for the children.  The caseworker said that the Department had contacted maternal grandparents early in the case, and they indicated that they could not be a placement because they already had mother's older child.  The caseworker also testified that maternal grandparents had not reached out to her to say that they had changed their position and maternal grandfather had recently passed away.  The caseworker testified that the children were in a foster placement, the foster parents wanted to adopt them, and termination and adoption was in their best interests because they needed permanency that only an adoption could provide.

¶ 22    Still, mother asserts that the Department did not adequately investigate maternal grandparents because it did not contact the maternal grandparents again after the juvenile court adopted a permanency goal of adoption.  But mother does not direct us to any authority that requires the Department to repeatedly contact a

relative who already declined placement. Instead, mother cites a regulation that directs a department to conduct a "[f]amily search and engagement" every six months until a child has achieved permanency. Dep't of Hum. Servs. Rule 7.304.52(C), 12 Code Colo. Regs. 2509-4. Yet, nothing in this regulation requires the Department to reach back out to a relative that it has already contacted. *See* Dep't of Hum. Servs. Rule 7.000.2, 12 Code Colo. Regs. 2509-1 (defining "[f]amily search and engagement" as "the diligent and timely good faith effort to locate and contact" relatives).

¶ 23     Accordingly, we conclude that the Department sufficiently evaluated maternal grandmother for placement and therefore discern no error in the juvenile court's decision to reject less drastic alternatives to termination. *See D.B-J.*, 89 P.3d at 532.

## IV.   Disposition

¶ 24     The judgment is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.